[Civ. No. 2791. Third Appellate District.—January 29, 1925.]

In the Matter of the Estate of ABRAHAM EVERSTINE CLARY, Deceased.

**[1]** EXECUTORS AND ADMINISTRATORS—DEBT BY EXECUTOR TO DECEASED —PAYMENT — INJUSTICE NOT ALLOWED.—The provision of section 1447 of the Code of Civil Procedure that a debt by the executor to the deceased is to be regarded as money in his hands for which he is liable to the estate, being a mere fiction of law, can only subsist with justice, and should not be allowed to work injustice, either by charging the administrator with contempt or embezzlement in not paying over the moneys not received, where he is not able to pay.

**[2]** ID.—ACCOUNT BY PERSONAL REPRESENTATIVE—REMEDY—STATUTORY CONSTRUCTION. — Where the heirs of an executor are proceeded against to account for any moneys or assets which their ancestor, as executor, failed to account for in his administration of the estate, the proceeding for such accounting must be inaugurated under section 1639 of the Code of Civil Procedure, which provides for the rendering and settlement of the account of the administration by said executor by his personal representative.

---

(1) 23 C. J., p. 1135, n. 71.   (2) 24 C. J., p. 933, n. 66.

APPEAL from a decree of the Superior Court of Yolo County directing distribution. W. A. Anderson, Judge. Reversed.

The facts are stated in the opinion of the court.

Griffin, Boone & Boone and Edward T. Taylor, Jr., for Appellant.

Hudson, Grant and A. G. Bailey for Respondent.

HART, J.—The facts of this controversy are: That Abraham Everstine Clary died testate in the county of Yolo, state of California, on the third day of November, 1920. Surviving him were his wife Johanna and six children. Two of his sons, Edward F. Clary and Charles M. Clary, were nominated in his last will as executors thereof, qualifying as such on the sixth day of December, 1920, and jointly acting as such until the fourth day of April, 1921, when Charles M. Clary died intestate in the county of Monterey, state of California. From the last-mentioned date E. F. Clary continued as sole executor of said will.

The will of Abraham E. Clary provided that all the property of the estate was to go to the children of the deceased in equal shares, subject, however, to the right of the widow, Johanna, to the income from all the property during her life and "in case the income was insufficient for her care then the property was to be applied for her support, the estate not to be distributed until the death of the widow."

On the twenty-third day of June, 1922, approximately two months after the death of Charles M. Clary, the widow of Abraham passed away.

Charles M. Clary left surviving him his widow, two sons, and a daughter. Cecil M. Clary, son of Charles M., deceased, after due proceedings in the superior court of Monterey County, was appointed and later qualified as the administrator of the estate of Charles M. It having been determined, after the usual proceedings in such cases had been taken, that the estate of Charles M. was less than the sum of $2,500 in value, the whole of the same, on her application, was by the court set apart and assigned to his widow. (Code Civ. Proc., sec. 1469.)

Subsequent to the making of the decree by the superior court of Monterey County in the estate of Charles M. Clary, setting apart the whole of his estate to his widow, the real and other property belonging to the estate of Abraham E. Clary was sold and converted into cash, and at the time

said estate was distributed by the decree of the superior court of Yolo County to the beneficiaries named in the will to succeed thereto upon the death of the widow, the executor, E. F. Clary, had in his hands in cash the sum of $7,544.58.

Immediately following the death of Abraham E. Clary, and prior to the death of Charles M. Clary, a promissory note for the sum of $3,000, dated August 1, 1918, in favor of said Abraham, and signed by said Charles M. Clary, was found by E. F. Clary, the other executor, among the effects of Abraham, said note at all times subsequent to the time it was so found remaining in the hands of said E. F. Clary. Said note was made payable "one day after date to the order of A. E. Clary." Neither the note, nor the indebtedness it represents, was ever at any time included in any inventory of the estate of Abraham E. Clary, nor in any account of an executor as an asset of his estate, except in the final account. Nor was there any appraiser appointed to appraise the property of the estate of A. E. Clary until the third day of October, 1921, when one J. D. Musgrove was appointed sole appraiser of said estate, and qualified as such on the twenty-eighth day of October, 1921. No inventory was filed in the estate of A. E. Clary prior to January 9, 1922, nine months, approximately, after the death of Charles M. Clary.

As to said promissory note, the petition for settlement of the final account and distribution of the estate of Abraham E. Clary states: "That he (E. F. Clary, sole executor) filed inventories of all property which has come to his hands, except that at the time of the death of said Charles M. Clary, he was indebted to the estate of A. E. Clary on a promissory note for $3,000, on which had been paid $700 on account of principal, and $125 interest, leaving then due and owing from said Charles M. Clary to the estate of said Abraham Everstine Clary, . . . , the sum in excess of $2,000; that your petitioner is informed and believes, and therefore, avers, that it was the duty of the said Charles M. Clary to inventory his said indebtedness to said estate as cash in his hands, but through inadvertence or ignorance of the law, the said Charles M. Clary did not so inventory said note, and the same does not appear in the inventory of said estate." Payments on principal and interest on the

note were indorsed on the back thereof, the last payment on principal having been made on November 21, 1921, and on account of interest on January 2, 1920.

It is admitted that no demand was ever made upon C.. M. Clary by his coexecutor to settle or pay said note or indebtedness to the estate of A. E. Clary, and that no claim based upon said note was ever filed or presented to the estate of said C. M. Clary, deceased; nor was there any attempt ever "made to collect the indebtedness alleged to have arisen from the note prior to the filing of the petition for final distribution four years and three months after the note became due"; that "no other steps were taken at that time with the exception of petitioning the court that the executor be allowed to retain the interest of C. M. Clary (in the estate of A. E. Clary) on account of said indebtedness"; that "no discharge of record has been entered discharging the said Cecil M. Clary as administrator of the estate of C. M. Clary."

Written objections and exceptions were interposed by the heirs of Charles M. Clary, deceased, to the final account, report, and petition for distribution of the estate of A. E. Clary, deceased. Among the grounds of objection to said account, etc., was and is that A. E. Clary, prior to his and C. M. Clary's death, released the latter from all obligation to pay said note. It was also objected that the note and indebtedness thereby evidenced was barred by subdivision 1, section 337 of the Code of Civil Procedure. The jurisdiction of the superior court sitting in probate to hear and determine the matter thus presented was also challenged.

Evidence, both oral and documentary, was taken, and the court found as to said note and indebtedness against all the claims made by the heirs of C. M. Clary in their exceptions to the settlement of the final account, and found in particular that said A. E. Clary was the owner and holder of said note, upon which there was due the sum of $2,965.91 at the time said C. M. Clary qualified as executor, and upon which nothing had been paid. The court further found that the sum total of all the commissions earned by the executors of the will of A. E. Clary for their services as such was $498.28, of which amount one-fourth, to wit, the sum of $124.57, was earned by C. M. Clary while acting as a joint executor of said will.

As to the promissory note and the indebtedness remaining unpaid thereon, the court decreed: "That it was the duty of the said Charles M. Clary, upon accepting the appointment of joint executor of the said last will and testament of Abraham Everstine Clary, deceased, to have inventoried, as 'cash then in his hands,' the amount of his indebtedness to the said Abraham Everstine Clary, or his estate, which he did not do." The court further decreed:

"That but for such indebtedness, aggregating $2,965.91, the said Charles M. Clary, or his heirs at law, or successors in interest (the contestants herein), would have been entitled to receive upon the distribution of said estate the sum of $1,257.50 as his distributive share, together with the further sum of $124.51 hereinabove allowed as his share of the commissions earned by the executors of said estate, aggregating $1,382.07, which sum should be retained by said Edward Ferguson Clary, executor, and be and is hereby, set off against his (said Charles M. Clary's) said indebtedness of $2,965.91, to the estate of Abraham Everstine Clary, deceased."

The contention of the respondent is that, inasmuch as the indebtedness of C. M. Clary to A. E. Clary existed at the time the former qualified and so accepted his appointment as executor of the will of the latter, said indebtedness, upon acceptance by C. M. Clary of such appointment, became, under the terms of section 1447 of the Code of Civil Procedure, money and assets of the estate of A. E. Clary in the hands of C. M., as such executor; that it was within the jurisdiction of the superior court, in the exercise of its probate jurisdiction and on the hearing of the petition for the settlement of the final account and for a decree of distribution, to require an accounting of such assets; that, if the same be not thus accounted for, the court is authorized in its decree settling the final account, to adjudge that C. M. Clary was and is indebted to the estate of A. E. Clary to the extent of said indebtedness, and further adjudge and decree that the distributive share of said C. M. Clary in said estate and his commissions for his services as such executor be retained by the estate as an offset to or in recoupment of said indebtedness. As seen, the court below adopted that view of the case and upon that theory, as to said indebtedness, made and entered its decree. Section 1447 of

the Code of Civil Procedure provides: "The naming of a
person as executor does not thereby discharge him from any
just claim which the testator has against him, but the claim
must be included in the inventory, and the executor is liable
for the same, as for so much money in his hands, when the
debt or demand becomes due."

Counsel for the respondent cite a number of cases from
other jurisdictions which declare it to be the rule that "if
a legatee under a pecuniary bequest or a distributee is in-
debted to the estate, the amount of the debt may be retained
from the legacy or distributive share, and the balance, if
any, paid by him to the legatee or distributee in full of his
claim; and the same rule is applicable to the assignees of
the legatee or distributee, or to persons otherwise succeeding
to his interest. This is often spoken of as a right of set-off,
but it is said that, strictly speaking, it is a right of re-
tainer." (11 Am. & Eng. Ency. of Law, p. 1170, and cases
named in the footnotes.) This right, it is said in some of
the cases, is founded on the principle that the administrator
or executor has an equitable lien on the share of the dis-
tributee or legatee until the latter has discharged the obliga-
tion which he owes to the estate. (*Holmes* v. *McPheeters*,
149 Ind. 587 [49 N. E. 452].) And "it is an equitable
right of its own nature, and not at all dependent upon any
statute." (*Webb* v. *Fuller*, 85 Me. 443 [22 L. R. A. 177,
27 Atl. 346].)

In our state there are cases which hold that the superior
court, sitting in probate, has jurisdiction to hear and deter-
mine the question of the title to money or other personal
property which has come into the possession of an executor
or administrator in his official capacity, and which, in fact,
belongs to the estate, but which such executor or adminis-
trator claims to be the owner of in his individual capacity
and adversely to the estate. (*Stevens* v. *Superior Court*, 155
Cal. 148, 150 [99 Pac. 512]); *In re Burdick*, 112 Cal. 387,
391 [44 Pac. 734]; *Estate of More*, 121 Cal. 609 [54 Pac.
97]; *Estate of Walker*, 125 Cal. 242 [73 Am. St. Rep. 40,
57 Pac. 991]; *Estate of Thomas*, 140 Cal. 397 [73 Pac.
1059]; *Estate of Pease*, 149 Cal. 167, 170 [85 Pac. 149];
*Estate of Hall*, 154 Cal. 527 [98 Pac. 269]; *Estate of Emer-
son*, 175 Cal. 724 [167 Pac. 149]; *In re Loheide*, 17 Cal.
App. 475 [120 Pac. 56].)

It will be noted, however, that in all the last above-named cases the issue arose during the course of administration of the estate and while the executor or administrator was still alive and acting as such executor or administrator and involved the question whether the executor or administrator had accounted for all the assets of the estate coming into his possession as such officer, the question always being raised by the heirs, the devisees, or legatees by objections to the petition praying for the settlement of the account of the executor or administrator.      There is, though, a much more forceful reason why the course pursued by the court below as to the alleged indebtedness of C. M. Clary to the estate of A. E. Clary cannot be approved, and that reason is to be found in the fact that the legislature of 1905 took occasion to prescribe specifically in section 1639 of the Code of Civil Procedure the course to be followed in the matter of the settlement of the estates of deceased persons where the situation is similar to that presented here.  That section reads: "If any executor, administrator or guardian dies, his accounts may be presented by his personal representative to and settled by, the court in which the estate of which he was executor, administrator or guardian is being administered, and, upon petition of the successor of such deceased executor, administrator or guardian, such court may compel the personal representatives of such deceased executor, administrator or guardian to render an account of the administration of their testator or intestate, and must settle such account as in other cases."

In *King* v. *Chase*, 159 Cal. 420 [115 Pac. 207], the supreme court had occasion to consider the purpose and scope of the above section.  It appears that one Levi Chase, in the year 1896, was appointed as executor of the estate of his deceased wife, Cornelia Chase.  Levi entered upon the discharge of his duties as such executor and continued so to act until his death on the thirtieth day of May, 1906. Subsequently, Charles A. Chase, as the executor therein named, caused to be filed for probate the will of Levi Chase, and letters testamentary were issued to him.  In August, 1906, the court in which was pending the administration of Cornelia Chase's estate appointed Charles W. King administrator with will annexed of said estate.  King,

as such administrator, brought an action against Charles A. Chase, as executor of the will of Levi Chase, "and individually, to obtain an accounting of the property belonging to the estate of Cornelia A. Chase, which came to the possession of defendant as executor of the will of Levi Chase, and for the recovery of such property when ascertained and determined." A trial of the issues was had and findings were made to the effect that a large sum of money and certain specific personal property belonging to Cornelia's estate were in the possession of Levi Chase, as executor of Cornelia's will before and at the time of his death, and that the same passed into the possession and control of Charles A. Chase, as executor of the will of said Levi Chase. Judgment passed in favor of King, as administrator of Cornelia Chase's estate and against Charles A. Chase, as executor of Levi's will, compelling the latter to turn over to said Charles A. King, as administrator of Cornelia's estate, all the money and personal property in his (Charles A. Chase's) possession, as executor of Levi's will. Charles A. Chase, as executor, etc., appealed. In disposing of the case on appeal, the supreme court, speaking through Mr. Justice Sloss, said at pages 422 and 423 (115 Pac. 208): "Prior to 1905, when section 1639 was adopted, the statutes of this state contained no provision authorizing the superior court sitting in probate to settle such accounts. Nor was any such power conferred on the probate court, as that court existed under the constitution of 1849. For this reason, it was uniformly held that a bill in equity to compel the executor or administrator of an executor or administrator to settle the account of his testator or intestate with the estate in which the decedent had been acting, was the appropriate, as it was the only, procedure. (*Bush* v. *Lindsey*, 44 Cal. 121; *Chaquette* v. *Ortet*, 60 Cal. 594; *In re Thompson*, 101 Cal. 349 [35 Pac. 991, 36 Pac. 98, 508]; *Vance* v. *Smith*, 124 Cal. 219 [56 Pac. 1031]; *Slater* v. *McAvoy*, 123 Cal. 437 [56 Pac. 49]; *Zurfluh* v. *Smith*, 135 Cal. 644 [67 Pac. 1089]; *Guardianship of Wells*, 140 Cal. 349 [73 Pac. 1065].) The power of a court of equity to entertain a suit of this character is, in these cases, based upon the very ground that there is no other method of compelling the accounting. Thus, in *Bush* v. *Lindsey*, 44 Cal. 121, the court said: 'We are referred to no pro-

vision of the probate act which authorizes the probate court to cite the administrator of an administrator to settle the account of his intestate with the estate of which he was the administrator, and, after a careful examination of the act, we find none which confers that authority. The power must be lodged in some tribunal to require such an account to be taken and settled; and if the probate court does not possess it, it must reside in the district court, as a branch of its equitable jurisdiction.' So, in *Chaquette* v. *Ortet,* 60 Cal. 594, the court states that 'there is no provision of the statute providing for the settlement of the account of an administrator who dies before rendering an account. It is because of the absence of such statutory provision, that the right and duty to compel such accounting belongs to a court of equity. . . . While the power of the court, sitting in probate, was limited, under the pre-existing law, to a settlement of the accounts of a living administrator or executor, this statute extends the authority to cover the entire field of accounting by executors or administrators, so long as the estate itself remains subject to the jurisdiction of the court. That this is a wise and reasonable provision is not to be doubted. The court which has taken charge of the administration of the estate of a decedent is the proper forum for the determination of all questions incidental to that administration. The settlement of the accounts of the personal representative appointed to conduct the administration is one of the principal functions of the probate court.'' (See, also, *In re Philbrook*, 47 Cal. App. 678, 683, 684 [191 Pac. 77]; *Estate of Randall,* 188 Cal. 329, 333 [205 Pac. 118].)

In the case of *In re Smith,* 108 Cal. 115 [40 Pac. 1037], Robert Smith died testate in the year 1891 and named his sons, John A. and William R., as executors. Both qualified, both were beneficiaries under the will and both, after service, died before settlement of their accounts. In 1893 and after the death of the executors just named, one Robert Cardiff was appointed administrator with the will annexed and subsequently in the same year filed his final account. The court found that during the executorship of John A. Smith he received $264.65, moneys of the estate, and disbursed the sum of $17.50, leaving in his hands at the time of his death $247.15, belonging to the estate of deceased which was never

paid over. The court said: "When John A. died his estate went into probate. His brother William continued as executor of the father's estate, but presented no claim against the estate of the brother. When William in turn died the time for presenting claims against the estate of John A. had expired. The court distributed to the estate of John A. the three-tenths of the residue of the personal property devised to him and did not deduct the two hundred and forty-seven dollars and fifteen cents from his distributive share. John A. held the estate's money as trustee, and upon his death, being indebted to his beneficiary, the estate, its position became no better than that of any other creditor unless it was able to pursue the precise trust fund. (*Lathrop* v. *Bampton*, 31 Cal. 23 [89 Am. Dec. 141]; *Roach* v. *Caraffa*, 85 Cal. 436 [25 Pac. 22].) It was the duty of William, as surviving executor, to have presented a claim against his brother's estate or to have compelled an accounting of his brother's trust in equity.. (*In re Allgier*, 65 Cal. 228, 230 [3 Pac. 849]; *Chaquette* v. *Ortet*, 60 Cal. 594.) The court had no power to deduct the amount from the share of the estate of John A. upon distribution. Assets cannot be collected upon distribution (*In re Cook*, 77 Cal. 220, 232, 233 [11 Am. St. Rep. 267, 1 L. R. A. 567, 17 Pac. 923, 19 Pac. 431]), and the two hundred and forty-seven dollars and fifteen cents was not an advance to the devisee, so as to bring this case within the principle of *Estate of Moore*, 96 Cal. 522 [31 Pac. 584]."

*In re Smith*, 108 Cal. 115 [40 Pac. 1037], was decided in the year 1895 and prior to the enactment of section 1639 of the Code of Civil Procedure.

It will be observed from the decision that even before the enactment of section 1639 of the Code of Civil Procedure the court had no power in settling the final account of the deceased to deduct from the distributive share of the executor of such estate, who was also a legatee or a distributee therein, the amount of any money or debt he might have retained or owed the estate arising during the course of his administration thereof as executor.

Counsel for the respondent contend that the case of *In re Smith* is not in point here for the reason that in that case an attempt was made "to charge the administrator with a

liability which did not exist against him at the time of his appointment but which arose out of facts occurring during his administration,'' whereas, in the instant case the executor was indebted to the testator or his estate at the time he accepted the appointment of executor, upon the happening of which event the debt became ''money in his hands'' for which he was liable to the estate by virtue of the provisions of section 1447 of the Code of Civil Procedure. We can perceive no real distinction between the two situations. In both cases, the executor was indebted to the estate by reason of having failed to account for certain moneys coming into his possession and belonging to the estate as part of the assets thereof. The only difference between the two is that in this case the money was assets in the hands of the executor only in contemplation of law, while in the case of *In re Smith* the money was actually in his hands, There is nothing in the language of section 1447 which would justify the conclusion that any other course to obtain an accounting at the hands of the heirs of C. M. Clary for the money which was theoretically in said Clary's possession as executor than that prescribed by section 1639 should be resorted to. In both cases it is nothing less than a failure of the executor to account for certain assets of the estate, although in such a case as this there may be circumstances which would justify a less rigorous enforcement of the obligation to account than where the assets are or were actually in the hands or possession of the executor as such. [1] In other words, the provision of section 1447 that a debt by the executor to the deceased is to be regarded as money in his hands for which he is liable to the estate, being a mere fiction of law, ''can only subsist with justice, and should not be allowed to work injustice, either by charging the administrator with contempt or embezzlement, in not paying over moneys not received'' where he is not able to pay. (*Estate of Walker*, 125 Cal. 242 [73 Am. St. Rep. 40, 57 Pac. 991].) [2] But, at any rate, whatever might have been the rule of procedure in such a case as the one we have here prior to the enactment of section 1639, or whatever may be the procedure in such cases in other jurisdictions, it is certainly thoroughly established by said section that where

the heirs of an executor are proceeded against to account for any moneys or assets which their ancestor, as executor, failed to account for in his administration of the estate, the proceeding for such accounting must be inaugurated under said section of the Code of Civil Procedure.

If it should be necessary to decide, as the above-mentioned eastern cases declare, that where an executor or administrator, who is also a distributee or legatee of the estate of the will of the deceased or an heir, has retained or not accounted for some of the assets of the estate, or is indebted to the estate, the estate may be vested with an equitable lien upon the distributive share or legacy of such executor or administrator, still, where such executor or administrator has died before the completion of the administration of the estate or prior to the distribution thereof, leaving heirs, the proper mode for the determination of the matter as against such heirs, or, it may be correct to say, for the enforcement of such lien as against such heirs, is now that prescribed by section 1639 of the Code of Civil Procedure. At all events, a consideration of the provisions of section 1639 compels the conclusion that the court below in this proceeding was without jurisdiction, as against the interests of his heirs, to appropriate the distributive share of C. M. Clary in the estate of his father or the commissions earned by him as executor to the extinguishment of his indebtedness to said estate.

There are other questions raised which, in view of the conclusion at which we have arrived herein, we do not think it is necessary to discuss.

That portion of the decree of the court below appealed from is reversed.

Plummer, J., and Finch, P. J., concurred.

NOTE.—By the Court: After the filing of the above opinion on January 29th, the opinion of the supreme court in *Estate of Cates*, 195 Cal. 319 [232 Pac. 972], appeared in the "San Francisco Recorder" of January 30th. That case, while different from this in the facts, nevertheless, discusses and therein applies the principle underlying section 1639 of the Code of Civil Procedure and, therefore,

we now cite the Cates case as in support generally of the conclusion arrived at in the instant case.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 30, 1925.