[L. A. No. 9253. In Bank.—November 23, 1927.]

In the Matter of the Estate of FRED PHILLIPS, Deceased. GEORGE E. MILLS, Appellant, v. KATHRYN PFEIFFER, Respondent.

[1] Estates of Deceased Persons — Wills — Testamentary Capacity — Evidence. — In a will contest upon the ground, among others, that the testator was lacking in testamentary capacity, in which the evidence showed that, while the testator required assistance as to his personal wants and constant care, he continued to take an interest in the management of his property and was able to make decisions respecting the same, he kept track of his money matters in a general way and signed checks

---

1. See 26 Cal. Jur. 660 et seq.

until shortly before his death, and it was not shown that he was afflicted with general insanity nor that he was unable to understand the nature and extent of his property, nor that he did not have in mind those who would be the natural objects of his bounty, and it was not shown that he suffered delusions which would affect the testamentary act, nor that he was unable to comprehend the nature and purpose of the testamentary act when his will was executed, in the preparation of his will he being assisted by an old-time friend, the testimony of lay witnesses as to the mental condition of the testator being in conflict and that of expert witnesses of both parties in response to a hypothetical question by counsel for the proponent being in substantial accord to the effect that at the time of the execution of the will the testator was not suffering such a degree of mental incapacity as would prevent him from making a valid will, there was no abuse of discretion in upholding the will.

[2] ID.—EVIDENCE—HYPOTHETICAL QUESTION.—In a will contest a hypothetical question propounded by the contestant was improper where it assumed that the testator drafted his will unassisted, when the evidence was undisputed that he had assistance in the drafting thereof.

[3] ID. — UNDUE INFLUENCE — INSUFFICIENCY OF EVIDENCE.—In this will contest it is held that the finding of the trial court on the issue of undue influence against the contestant was not unsupported by the evidence.

[4] ID.—OVERPOWERING VOLITION OF TESTATOR—PROOF.—In order to set aside a will for undue influence there must be substantial proof of a pressure which overpowered the volition of the testator at the time the will was made.

[5] ID. — CONFIDENTIAL RELATIONSHIP — EVIDENCE.—In this will contest it is held that a confidential relationship, assuming that one existed between the proponents and the testator, was not sufficient, in the light of the facts disclosed and found, to require a finding of undue influence.

[6] ID. — INTEREST OF CONTESTANT — ADMISSIONS.—In a will contest, in which the proponents and the contestants are both strangers to the blood of the deceased, where there was no denial of the allegation of the written opposition to the contest that the contestant was a beneficiary under a previous will of the deceased, the interest of the contestant was admitted by failure to deny the allegation of interest; but the insufficiency of the evidence to support a finding of lack of interest in the contestant did not

4. See 26 Cal. Jur. 650 et seq.
5. See 26 Cal. Jur. 650, 652, 654,
6. See 2 Cal. Jur. 139,

prejudice the latter, where, if the court had found that contestant had the necessary interest, the judgment would otherwise have to stand.

[7] ID. — PETITION FOR PROBATE OF WILL — REFUSAL OF EXECUTOR TO SIGN — EXCLUSION FROM ADMINISTRATION — DISCRETION.—In a will contest where the evidence justifies the conclusion that the contestant refused to sign a petition for the probate of a certain will, under which he was not a beneficiary, but claimed to be a beneficiary under a previous will, the court properly exercised its discretion in making an order that the contestant's attitude was so inimical to, the best interests of the estate as to exclude him from his right to participate in its administration.

[8] ID. — MINUTE ORDERS — JUDGMENT. — A minute order denying probate to a will and admitting another to probate and appointing an executrix, which order does not purport to be a final determination of the matter in the trial court, but incorporates a direction to counsel for proponent to prepare and submit to the court a draft of findings of fact and conclusions of law in favor of the proponent, is not appealable and an attempted appeal therefrom should be dismissed.

(1) 40 Cyc., p. 1020, n. 11, p. 1023, n. 29.    (2) 22 C. J., p. 713, n. 96.    (3) 40 Cyc., p. 1165, n. 87.    (4) 40 Cyc., p. 1144, n. 53.    (5) 40 Cyc., p. 1169, n. 15.    (6) 40 Cyc., p. 1272, n. 53, p. 1359, n. 77. (7) 23 C. J., p. 1029, n. 38.    (8) 3 C. J., p. 571, n. 47.

APPEAL from a judgment of the Superior Court of Los Angeles County. F. C. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

William Ellis Lady for Appellant.

Frank E. Oster for Respondent.

SHENK, J.—This is an appeal from a judgment admitting to probate the last will and testament of Fred Phillips, deceased. The proponent and respondent, Mrs. Kathryn Pfeiffer, and the contestant and appellant, George E. Mills, are strangers to the blood of the deceased. They will be referred to as the proponent and contestant.

On the tenth day of January, 1925, the proponent filed in the superior court, in and for the county of Los Angeles, her petition for the probate of a will of decedent dated February 3, 1922. In addition to formal allegations, she

alleged that Fred Phillips died on the fifteenth day of December, 1924, in the county of Los Angeles, leaving an estate therein, consisting of real and personal property producing an approximate annual revenue of $10,000; that she and the contestant were named in said will as executrix and executor thereof; that the contestant refused to sign the petition for probate of said will and had renounced his right to appointment as executor; that the decedent left no next of kin or heirs at law, and was at the time of his death of the age of about ninety-five years. A copy of the will, sufficient in form to entitle it to probate, was attached to the petition. By the terms of the will the following bequests and devises were made: To Fred Phillips Turton of Garfield, Utah, $500; to Mrs. Bennett Botsford of Chicago, $3,000; to Mrs. Adalade Young of Chicago, $3,000; to Mary Holman of Los Angeles, $500; to Clara Williams and Jessie Shoup, both residing in Idaho, the testator's interest in a group of mines and mining properties located in Lemhi County, Idaho; to Kathryn Pfeiffer, the proponent, a residence property, the home of the decedent, and the furniture therein, located at the corner of Twenty-fifth Street and Gramercy Place, in the city of Los Angeles; also an interest in certain mines and mining properties in Custer and Lemhi Counties in Idaho. The proponent was also made the sole residuary legatee and devisee. She and the contestant were nominated executrix and executor, and all former wills were expressly revoked. Donald M. Redwine and M. M. McPherson were the subscribing witnesses. By this will no portion of the estate was left to the contestant.

On January 13, 1925, the contestant filed his written opposition to the probate of said will, wherein it was alleged that at the time the decedent executed said will he was wanting in testamentary capacity by reason of unsoundness of mind; that said will was obtained from the decedent through undue influence and fraud on the part of proponent. It was further alleged that the decedent left a will of date October 12, 1914, wherein he devised and bequeathed a large portion of his estate, to wit, a portion in excess of $10,000, to the contestant. On March 11, 1925, the contestant filed his amended contest, wherein he re-alleged substantially, but more in detail, the matters set forth in

the original opposition, and further alleged that in and by said will of 1914 the decedent had made Mrs. Pfeiffer and himself the residuary devisees and legatees, to share equally, and that the contestant's interest in the *residuum* was in excess of $50,000, and that said will of 1914 had never been revoked. In her answer to the amended opposition the proponent made certain admissions, hereinafter noted, but denied that the will of 1914 had never been revoked and specifically denied the contestant's allegations with reference to the incompetency of the decedent, undue influence, and fraud.

The contest was tried by the court sitting without a jury. The court found in favor of the proponent on all the issues presented, and admitted the will of February 3, 1922, to probate. The contestant contends that the findings are unsupported by the evidence and that the court committed prejudicial error in a number of its rulings. The trial was protracted and the record is voluminous. Some forty-two points are presented by the contestant for determination. To discuss them all would unduly prolong this opinion and would serve no useful purpose as a basis for our conclusions. Only those necessary for a determination on the appeal will be discussed.

[1] The evidence disclosed without conflict that the testator was a man of very advanced age at the time of his death. The weight of ninety-five years naturally bore down upon him. Physically he was suffering an impairment of sight and hearing, but it may be said that he was well preserved for a man of his age. He died about two years after the will of 1922 was executed, not because of his advanced age, but more directly as the result of complications which developed after a fall, which occurred about ten days or two weeks before his death. As to his mental condition, it was in evidence that he was absent-minded and repeated questions already asked and answered a short time previously, and at times seemed confused and unable to recognize those about him. The proof even on behalf of contestant, however, fell short of the requirements of the law necessary to establish testamentary incapacity. While the testator required assistance as to his personal wants and constant care, he continued to take an interest in the management of his property and was able to make decisions

respecting the same. He kept track of his money matters in a general way and signed checks until shortly before his death. It was not shown that he was afflicted with general insanity nor that he was unable to understand the nature and extent of his property, nor that he did not have in mind those who would be the natural objects of his bounty. It was not shown that he suffered delusions which would affect the testamentary act, nor was it disclosed that he was unable to comprehend the nature and purpose of the testamentary act when the will of 1922 was executed. In the preparation of the will he had the assistance of Mr. Mc-Pherson, an old-time friend, who devoted parts of four days in going over with the decedent the terms of the proposed will and perfecting it as to form. The testimony of the lay witnesses as to the mental condition of the testator at or about the time of the execution of the will of 1922 presented a conflict in the evidence. It was the province of the trial court to resolve that conflict one way or the other in the exercise of its discretion. The burden was upon the contestant, and a review of the record discloses that there was no abuse of such discretion. The testimony of the expert witnesses for both parties in response to a hypothetical question propounded by counsel for proponent was in substantial accord to the effect that at the time of the execution of the 1922 will the testator was not suffering such a degree of mental incapacity as would prevent him from making a valid will. The contestant objected to the form of this hypothetical question, but we find that in substance it was based upon facts proved during the trial. [2] The expert witnesses produced on behalf of contestant testified in response to a hypothetical question propounded by counsel for contestant that, assuming the facts incorporated in the question to be true, the testator was mentally incapable, unassisted, of drafting the will of 1922. But the question propounded to those witnesses by contestant was improper in this, that it assumed that the testator drafted the will unassisted by anyone. The will was correct and precise in form and phraseology, and was complete in its description of real and personal property. The evidence was undisputed that the testator did not prepare the draft of the will unassisted, but, on the contrary, was afforded the assistance of McPherson, who remained in the company of

the testator in the preparation of the draft of the will. In this preparation there were exemplars at hand available for comparison consisting of copies of former wills, one of which had been prepared under the supervision of a lawyer. There was also at hand a handbook of forms showing the proper language to be used in preparing a will. In view of this undisputed testimony the hypothetical question propounded by contestant to his expert witnesses assumed facts not supported by the record. The evidence in support of the issue of incompetency of the testator was not only insufficient to establish testamentary incapacity as required by numerous decisions of this court, but supported abundantly the finding of the trial court on the subject. A few of our more recent decisions reiterating the rule in such cases are *Estate of Perkins*, 195 Cal. 699 [235 Pac. 45], *In re Shay's Estate*, 196 Cal. 355 [237 Pac. 1079], *Estate of Gunther*, 199 Cal. 119 [248 Pac. 514], *Estate of Sexton*, 199 Cal. 759 [251 Pac. 778], *Estate of McDonough*, 200 Cal. 57 [251 Pac. 916], *Estate of Haupt*, 200 Cal. 147 [252 Pac. 597], and *Estate of Smith*, 200 Cal. 152 [252 Pac. 325].

[3] Nor was the finding of the court on the issue of undue influence unsupported by the evidence. In this connection the relationship existing for many years between the proponent and the testator is worthy of note. The testator was born in England and came as a young man to the United States. He found his way to Idaho, where he engaged for a long period of time in the general merchandise business. He prospered and accumulated a considerable fortune. He married but had no children. He and his wife knew the proponent from her childhood in Idaho and were deeply attached to her. His acquaintanceship continued through the years. Mrs. Phillips died in 1911. It was in evidence that on her deathbed she exacted from proponent a promise to remain with and care for Mr. Phillips as long as he should live; that at the same time Mrs. Phillips exacted from her husband a promise to provide well for proponent; that in accordance with such promises Mr. and Mrs. Pfeiffer took up their residence at the home of Mr. Phillips and remained there until the death of the testator in December, 1924. During those thirteen years Mr. Pfeiffer, although regularly employed

elsewhere, spent much time in caring for the grounds, garden, and flowers at the testator's home. The proponent devoted herself to the care of Mr. Phillips. She managed the household, did the ordering and buying, nursed Mr. Phillips when he was ill, looked after his clothing and attended to his wants and necessities as a daughter would do for her father. For this service neither the proponent nor her husband received any compensation.

Prior to 1919 and before the execution of the 1914 will, the testator owned another residence property located at 919 South Burlington Avenue in Los Angeles. In the will of 1914 he devised this property to the contestant, whom he had known for many years and with whom he had been associated in business. In 1919 the testator conveyed this property to the contestant by deed of gift. Early in the year 1922 Mr. McPherson came from his home at Pacific Grove to visit Mr. Phillips at the latter's request, communicated by letter through the proponent. In this letter Mr. McPherson was advised that Mr. Phillips desired to see him and to have him assist in redrafting the will. During the days when the will was in the course of preparation, the proponent was attending to her household duties. Her part in the preparation of the document was to copy the same in pen and ink from the pencil notes prepared by Mc-Pherson. When this was done the draft was taken to a public stenographer to have the same typewritten. When the will was ready for execution it was read to the testator by McPherson. Just before the will was signed the subscribing witness Redwine, who was well known to the testator, had occasion without special prearrangement to call at the testator's home. He was requested to sign as a witness to the will. The evidence as to whether the proponent was at the side of the testator or was elsewhere in the house when the will was signed was conflicting, and the court undoubtedly resolved this conflict in favor of the proponent. It found that no undue influence had been exercised by her bearing upon the testamentary act. [4] "In order to set aside a will for undue influence there must be substantial proof of a pressure which overpowered the volition of the testator at the time the will was made." (*Estate of Kilborn*, 162 Cal. 4 [120 Pac. 762]; *In re Langford*, 108 Cal. 608 [41 Pac. 701]; *Estate of Mauvais*, 43

202 Cal.—32

Cal. App. 779 [185 Pac. 987].) **[5]** A confidential relationship, assuming that one existed between the proponent and the testator, as contended by contestant, was not sufficient in the light of the facts disclosed and found to require a finding of undue influence. (*Estate of Presho,* 196 Cal. 639 [238 Pac. 944]; *Estate of Morcel,* 162 Cal. 188 [121 Pac. 733].) Under well-recognized rules the evidence was insufficient to support a finding of undue influence. On the contrary, the finding is well supported.

The issue of fraud tendered by the contestant is entirely lacking in evidentiary support on the record presented.

**[6]** The court further found that the contestant had no interest in the estate sufficient to enable him to contest the will of 1922. It is contended that this finding is without support in the evidence. The will of 1914 was not produced and no attempt was made to establish it as a lost or destroyed will. The written opposition, however, alleged the interest of the contestant as a beneficiary of a substantial portion of the estate under the will of 1914. The answer of the proponent admitted "that some time about the year 1914 said Fred Phillips executed a will, but she alleges that she has no knowledge as to the date or year of the execution thereof." She denied that the will of 1914 had never been revoked and denied that the same was a subsisting will. She further denied that contestant was entitled to receive any portion of the estate under the said will. There was no denial of the allegation of the written opposition that the contestant was a beneficiary under that will. The interest of the contestant must therefore be deemed to have been admitted by proponent by her failure to deny the allegation of interest and the finding of the court to the effect that the contestant lacked sufficient interest to contest the will of 1922 is without support in the evidence. The insufficiency of the evidence to support this finding, however, cannot prejudice the contestant for the reason that if the court had found that contestant had the necessary interest the judgment would otherwise have to stand.

**[7]** It is further contended that the court was in error in holding that the contestant had renounced his right to serve as executor and in appointing the proponent as the sole personal representative. The evidence is sufficient to

justify the conclusion that the contestant refused to sign the petition for the probate of the 1922 will. Such being the case, the court properly exercised its discretion in making the order holding in effect that the contestant's attitude was so inimical to the best interests of the estate as to exclude him from his right to participate in its administration.

[8] There is an appeal in the record from an order entered in the minutes of the court on the fifteenth day of December, 1925, stating that the will of 1914 be denied probate; that the will of 1922 be admitted to probate and appointing the proponent sole executrix without bond. This minute order, however, does not purport to be a final determination of the matter in the trial court, for there is incorporated therein a direction to counsel for proponent to prepare and submit to the court a draft of findings of fact and conclusions of law in favor of the proponent and against the contestant. The decision and judgment subsequently filed and entered pursuant to the minute order constituted a final determination of the matter in the trial court. The appeal from said order was, therefore, improper and the same should be dismissed.

Other points made by the contestant do not require specific treatment.

While this controversy throughout has been spirited, the contestant's criticism of the trial judge is unwarranted. His opening brief contains disrespectful matter unjustified by the record. If our attention had been drawn to the same prior to the submission of the cause, some action might have been required to the extent, at least, of striking the brief from the files.

The appeal from the minute order of December 15, 1925, is dismissed and the judgment admitting the will of February 3, 1922, to probate is affirmed.

Richards, J., Seawell, J., Curtis, J., Preston, J., and Waste, C. J., concurred.

Rehearing denied.