IN RE TOOMEY'S ESTATE. RILEY, APPELLANT, v. HARRINGTON, EXECUTOR, RESPONDENT.

(No. 7,227.)

(Submitted March 29, 1934. Decided April 6, 1934.)

[31 Pac. (2d) 729.]

*Mr. Harry Meyer,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Timothy Nolan,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

John Toomey died April 19, 1932; his heirs at law were Joe Riley, Bart Riley, Margaret Riley, Bessie Riley Brown, Thomas Riley and Leo Riley, children of his deceased sister, all of age except Thomas and Leo. At the time of his death Toomey had on deposit in the First National Bank of Butte $5,199 in a savings account, and $4,872.59 in a checking account.

On May 21, 1930, Toomey made, dated and signed, entirely in his own handwriting, the following will:

"I John Toomey Do here by give to Tim Harrington A cousin of mine Every Cent of Money on deposit on 1st National Bank of Butte Mont. He to administer same as he sees fit. for Burial purposes and Masses & Sc. No Riley family is got to have no handling anything in regard to Burial or So forth So in conclusion I will say I disown them. As ever Signed

"Jno Toomey Kenwood Block Butte Mont."

Shortly thereafter Toomey had the savings account changed to the joint account of "John Toomey or Tim Harrington" with the right of survivorship, and at some time thereafter he told Harrington to withdraw the money as soon as he heard of his death.

Toomey was suffering from no known ailment at the time he created the joint account, but a year later he became afflicted with heart disease and went to Arizona, where he remained until his death. On April 18, 1932, he wrote Harrington as follows:

"Dear Tim: Just a few lines to let you know Im living and its about all. * * * Say Tim one request Im asking you is to have my body brought to Butte and Buried beside Mother and Con. And I would like you to give Tom & Leo $1,000 each so you keep the rest, out in a kind of Trust fund so none of the rest will now * * * So if anything should happen I want you to collect this money on that book on my trunk and this Engineers Union. * * * So hope no lawsuits, no more."

Immediately on hearing of Toomey's death, Harrington withdrew the "savings account" from the bank and offered the will for probate. The will was admitted to probate and Harrington qualified as executor, paid all just claims against the estate, and on January 13, 1933, rendered to the court his "First and Final Account," in which he accounted only for the amount found in the checking account, and showed a balance on hand of $3,718.21. He petitioned for the settlement of this account and the distribution of the estate.

In the course of administration Harrington, through his attorney, advised the Riley family of Toomey's letter written the day before his death, and furnished them with a copy thereof, but did not offer to pay the minors the $1,000 each mentioned in the letter, nor did he make any provision therefor on settlement and distribution of the estate; on the contrary, he declared in his petition that he was "entitled to the residue of the estate."

On February 2, 1933, Joe Riley filed "objections to the allowance of the first and final account" on the ground that the amount in the savings account was a part of the estate, and that the item of $25.45 for meeting the body at Pocatello, Idaho, was not a proper item of expense.

Bart Riley, as guardian of the persons and estates of Thomas Riley and Leo Riley, filed objections on the ground that the account ignored the trust created in favor of his wards.

Joe Riley then filed a petition for the probate of the will of May 21, 1930, and the letter of April 18, 1932, "as a codicil to said will," in which it is alleged that by the codicil "the sum

of $1,000 each is left to Thomas Riley and Leo Riley." Riley prayed that he be appointed administrator with the will annexed.

Thereupon Bart Riley proposed amendments to his objections to the distribution of the estate, which are upon the grounds that a petition for the probate of the will and codicil is pending; that the terms of the will do not make it certain as to whether Harrington "is to have the entire estate or only for the purpose of paying certain bequests"; and that the will is so uncertain and indefinite that it cannot be given effect, and therefore the residue of the estate "descended by law of succession to the heirs." The objections were met by answer and all the matters were heard jointly.

On the hearing Harrington admitted that he had collected $100 funeral benefits from the Engineers Union for which he had not accounted, and asserted that he had created a trust fund in favor of the minors by provisions in his will in favor of his wife. He contended that the amount of the savings account was no part of the Toomey estate.

On September 9, 1933, the court made and filed its findings of fact and conclusions of law. Therein it finds that Toomey did not leave the amount of the savings account as a part of the estate, but that it was transferred as a gift "in the nature of a final disposition or distribution thereof, made in contemplation of death." The court found that the total value of the estate was as stated in the account and the balance on hand was correct, except that there should be added thereto the $100 not accounted for. The court, however, declared in its findings of fact that Harrington was liable for inheritance tax on the amount received from the savings account as well as of the amount of the estate, and fixed the tax payable on each. The court then recites the facts concerning the letter of April 18, 1932, and that it is wholly in the handwriting of the testator who was, at the time of its writing and of the making of the will of May 21, 1930, of sound mind and not acting under the influence of duress, fraud or undue influence.

As a conclusion of law the court declares that the letter is not a codicil to the will; is not "wholly inconsistent with, and does not completely revoke" the will; that the two instruments taken together "express the intention and constitute the last will of the decedent; that is to say, that the residue of the estate should go $1,000 to Thomas Riley, $1,000 to Leo Riley, and the remainder to Tim J. Harrington." That "the words 'I want you to give Tom & Leo $1,000 each' immediately followed by the words 'so you keep the rest' are testamentary and imperative, and not precatory." That the attempted creation of a trust is invalid and void, and the $2,000 is "to be distributed" to the legally appointed guardian of the minors.

The court then overruled the objections to the introduction of the letter in evidence (on the trial overruled *pro forma*), and overruled all objections to the account and petition of the executor "inconsistent with these findings." It then declared that the executor's motion to dismiss the petition of Joe Riley "should be, and is now, granted," and said petition "is denied and dismissed." The court closes with, "Let decree or decrees be entered accordingly." The decree was not entered until September 30, 1933.

Joe Riley alone filed notice of appeal on November 22, 1933, and served the same only on Tim Harrington, as executor, his attorney, and upon the guardian of the two minors.

It is made to appear by supplemental transcript filed that the $2,000 was paid over to the guardian on October 7, 1933.

The executor filed motion to dismiss the appeal upon the grounds that the appeal should have been taken within sixty days after September 9, 1933; that that portion of the order appealed from directing payment to the guardian of the minors has been complied with; and that no notice of appeal was served upon the heirs of Toomey who have reached majority. A fourth ground is that the appellant did not file and serve a printed brief; as to this ground it is sufficient to say that, for good cause shown, this court authorized the filing of a typewritten brief.

On the first ground there is some justification for the motion ▮▮▮▮ found in what is said by this court in its decision in the *Matter of the McCracken Estate,* 87 Mont. 342, 287 Pac. 941; however, here we have but the filing of findings of fact and conclusions of law on September 9, in which it is clearly stated that these are to be followed by a formal decree, thus giving the parties an opportunity to object to, or move for any desired amendment of, the findings of fact and conclusions of law before the entry of the final decree—a practice to be commended.

The appeal must be taken from "a judgment or order" (sec. 9731, Rev. Codes 1921, subd. 3) within sixty days after the judgment or order "is made or entered, or filed with the clerk." (Sec. 9732, as amended by Laws 1925, Chap. 39.) Where the court sees fit to make and file findings of fact and conclusions of law in advance of making or entering its final judgment or order, these are but the foundations therefor (*State ex rel. Reser* v. *District Court,* 53 Mont. 235, 163 Pac. 1149), and the statutory period for appeal runs from the time the judgment or order is "made or entered, or filed with the clerk." (*In re Rose's Estate,* 80 Cal. 166, 22 Pac. 86; *In re Phillips' Estate,* 202 Cal. 490, 261 Pac. 709.)

Viewing the entire subject of the hearing covered by the decree, the appellant Joe Riley was, as an heir, interested in having the will declared too vague in its terms to warrant distribution to Harrington, as were all the Riley family; the two minors were interested, not only in the special bequests, but likewise in the residue of the estate. Joe Riley was, therefore, "a party aggrieved" and entitled to appeal (*In re Murphy's Estate,* 57 Mont. 273, 188 Pac. 146), and his right was not foreclosed by the payment of the special bequests in which he was not interested; he was required to serve a copy of his notice of appeal on "the adverse party." (Sec. 9733, Rev. Codes 1921.) An "adverse party" is one who has an interest in opposing the object sought to be accomplished by the appeal. (*T. C. Power & Bro.* v. *Murphy,* 26 Mont. 387, 68 Pac. 411; *Merk* v. *Bowery Min. Co.,* 31 Mont.

298, 78 Pac. 519; *Anderson* v. *Red Metal Min. Co.*, 36 Mont. 312, 93 Pac. 44.) The remaining heirs, not served, were not adverse parties within the meaning of the statute; their interests were identical with that of the appellant. (*In re Baxter's Estate*, 94 Mont. 257, 22 Pac. (2d) 182.)

The motion to dismiss the appeal is denied.

On the merits: It will be noted that the petition of Joe ▮▮▮▮ Riley did not seek the revocation of the will theretofore admitted to probate; he did not bring his petition within the provisions of either section 6995 or 10042 of the Revised Codes of 1921; he sought only to have the letter of April 18, 1932, admitted to probate as a codicil to the will; to have effect given to the provision for a special bequest to each of the minor heirs and to have himself appointed administrator. Except as to his appointment, he was successful.

On behalf of the heirs, Bart Riley, by his "proposed amendment," sought to have the will interpreted as being too vague and indefinite to be effective, other than to empower the executor to use so much of the funds as he saw fit in "Masses," burial expenses, and the like, and the payment of the special bequests, leaving the residue to be distributed according to the law of succession.

The court correctly held that the two instruments must be construed together in ascertaining the intention of the testator. (*In re Danford's Estate*, 196 Cal. 339, 238 Pac. 76.) The letter of April 18, 1932, if considered a will, would not revoke the former will, as it did not contain "an express revocation, or provisions wholly inconsistent with the terms of the former will"; the former will "remains effectual so far as consistent with the provisions of the subsequent will." (Sec. 6998, Rev. Codes 1921.)

The will of May, 1930, clearly expresses the intention of the testator to give to Tim Harrington all the money Toomey had on deposit in the bank named, "to administer same as he sees fit." Some doubt is cast upon this intention by throwing into the will the clause "for Burial and Masses & Sc." but this doubt is minimized by thereafter declaring that the testator

disowns the Riley family. The use of this expression can mean nothing else than that the testator intended that no member of the Riley family should participate in the distribution of his estate. To "disown" means "to deny," "to repudiate," "to refuse to acknowledge * * * relationship." (Webster's New Intern. Dictionary.) That the testator intended that his heirs should inherit the residue of his estate, after the payment of just claims and such an amount as the executor should see fit to expend for "Masses," is entirely repugnant to his express declaration that he refused to acknowledge their relationship to him. This repudiation was recalled by the later letter, to the extent of bequeathing to the two minors $1,000 each, but the testator might have made such bequests without acknowledging the relationship; he could have left any part of his estate to total strangers, had he seen fit. (*In re Hauge's Estate*, 92 Mont. 36, 9 Pac. (2d) 1065.)

The will was, except as to these special bequests, entirely consistent with the intention expressed in the letter wherein Toomey declared to Harrington that, except as to the $2,000, "you keep the rest." This quoted direction clearly applied to the residue of the estate, and the reference to a "trust fund" clearly had to do with the two $1,000 bequests, for the money was to be held in a trust fund "so none of the rest will know" that the testator was relenting to this extent in his avowed purpose to disinherit his legal heirs.

The appellant contends that the creation of the joint account, with the right of survivorship, at a time when Toomey was in good health, did not constitute either a gift *inter vivos* or a gift *causa mortis*. This may be true, but it is immaterial here, for, under the will, this money on deposit in the First National Bank of Butte would have gone to Harrington in any event. So long as all the debts were paid and Harrington did not evade paying inheritance tax on the sum, it is immaterial whether the money went to him as a gift or as an inheritance.

498

No reversible error appearing in the record, the judgment and order are affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur.

Rehearing denied April 13, 1934.