[No. 15754. In Bank.—July 12, 1895.]

IN THE MATTER OF THE ESTATE OF ROBERT SMITH, DECEASED.

| 108 | 115 |
|-----|-----|
| 111 | 562 |

| 108 | 115 |
|-----|-----|
| 131 | 293 |

| 108 | 115 |
|-----|-----|
| 138 | 363 |

| 108 | 115 |
|-----|-----|
| 147 | 105 |

WILL—CONSTRUCTION—DISPOSITION OF COMMUNITY PROPERTY—ELECTION OF WIDOW.—Of two permissible constructions of a will that which favors the conclusion that the testator is disposing only of his own half of the community property will be adopted; but where the testator undertakes in terms to dispose of all the property of the community, and declares that the will is made with full knowledge of the property rights of the husband and wife, and with her consent, though such declaration does not bind the wife, it is sufficient to put her to an election whether or not to take under the will.

ID.—TIME OF ELECTION—DISTRIBUTION OF ESTATE—PREVIOUS ELECTION—ESTOPPEL.—The widow may elect to take her half of the community property upon distribution of the estate, unless by former acts in dealing with the property she is estopped from making it, by a previous election to take under the will, and such previous election is to be tested by the rules of estoppel.

ID.—FINDINGS—ELECTION TO TAKE UNDER WILL—CONCLUSION OF LAW.—Where the court finds the acts of the widow, from which it concludes that she had elected to take under the will, the result reached is properly placed among the conclusions of law, and if regarded as a finding, it being declared by the court to be drawn from the facts previously stated, if those facts do not support the conclusion it must fall.

ID.—FACTS CREATING ESTOPPEL TO ELECT UPON DISTRIBUTION.—Before the widow can be denied her right to elect upon distribution to take her half of the community property it must be found that, with the knowl-

edge of her rights, by unequivocal acts evincing her intent, she has so dealt with the property left her by the will, that it would be inequitable to permit her to avoid those acts and disclaim her intent.

Id.—Acts not Establishing Estoppel—Conveyance of Life Estate—Declaration—Knowledge of Facts.—The conveyance by the widow of "all her interest in the property mentioned in the will as vesting a life estate therein upon the widow," to the sons of her deceased daughter, and a declaration to one of her grandsons that she wished the will to stand, are not sufficient to establish an implied election, or election by estoppel, to take under the will, it not appearing clearly that she recognized by her deed the life estate in the land devised to her, or that she had full knowledge of the facts concerning the properties and of her right to elect at the time she made the statement to her grandson.

Estates of Deceased Persons—Presentation of Claims—Death of Co-executor—Debt to Estate—Distribution—Offset.—Where one of two executors of the estate of a deceased person dies, having in his hands a portion of the funds of the estate, which could not be identified as a trust fund, it is necessary that a claim should be presented against his estate by the remaining executor of the estate of the original decedent; and, if the time has expired for presenting claims against the estate of the deceased executor, the amount due from him to the estate of the original decedent cannot be deducted from his distributive share of that estate.

Id. — Collection of Assets — Improper Deduction from Distributive Share.—Assets cannot be collected upon the distribution of an estate, and a sum due from the estate by a devisee to whom distribution is made, which is not an advance to the devisee, cannot be deducted from the share of the estate to which the devisee is entitled upon distribution.

Appeal from a judgment of the Superior Court of San Benito County. James N. Breen, Judge.

The facts are stated in the opinion of the court.

*N. C. Briggs,* and *John L. Hudner,* for Appellants.

The testator could not devise his wife's part of the property without her consent, she having received nothing under the will in place of her right. (*In re Gilmore,* 81 Cal. 240; *In re Gwin,* 77 Cal. 314; *King* v. *Lagrange,* 50 Cal. 332; *Estate of Silvey,* 42 Cal. 210.)

*Montgomery & Jefferson,* for Respondent.

The estate of Robert Smith, deceased, was merely a creditor of the estate of William R. Smith, deceased. (*Lathrop* v. *Bampton,* 31 Cal. 23; 89 Am. Dec. 141; *Roach* v. *Caraffa,* 85 Cal. 436.) Assets cannot be collected on

final distribution. (*In re Cook*, 77 Cal. 232, 233; 11 Am. St. Rep. 267.) The testator intended to devise his wife's moiety of the .community. (*In re Stewart*, 74 Cal. 103; *Etcheborne* v. *Auzerais*, 45 Cal. 121.) The widow was put to an election. (*Morrison* v. *Bowman*, 29 Cal. 350; 6 Lawson's Rights, Remedies, and Practice, 5219.) The widow had made a binding election to take under the will by her declarations and acts. (Bigelow on Estoppel, 3d ed., 566.) The findings should be construed as showing an election to uphold the judgment. (*Breeze* v. *Brooks*, 97 Cal. 77; *Himmelman* v. *Henry*, 84 Cal. 105.) Her deed was inconsistent with her rights under the will and indicated an election to take under the will. (*Morrison* v. *Bowman*, 29 Cal. 348; 1 Jarman on Wills, 325; *Noe* v. *Splivalo*, 54 Cal. 210.)

HENSHAW, J.—Appeals by the administrator with the will annexed, and by the widow, from the order settling the administrator's final account, and from the decree of distribution.

Robert Smith died in April, 1891, and by his last will bequeathed one dollar to each of his four grandchildren, and the residue of his personal property among certain of his children; to his son William R., four-tenths thereof; to his son John A., three-tenths thereof; to his daughter, Jessie, three-tenths thereof.

Said will provided as follows:

"Thirdly, I give and bequeath to my daughter, Mrs. Mary Cardiff, now of San Benito county, California, a life estate in my home ranch, in San Benito county, California, the same being described as follows, to wit: Being the southwest quarter of section 6, tp. 15 S., range 7 E., M. D. M., also all livestock, farming utensils, household furniture, and in fact all personal property that may be on said ranch, excepting money on hand, securities, and other evidences of money due me, to have and hold and use during her natural life as her own, and at her death to pass in fee to her sons, Robert Cardiff and Geo. H. Cardiff, and to their heirs in fee

simple. But in the event I survive my said daughter Mary Cardiff, then at my death said property to pass directly to her said sons, Robert and George Cardiff. This bequest, however, is not to take effect during the lifetime of my wife, Mary Smith, who is now residing with me on the above-described property; and, in the event she survives me, she is to have full and free use and absolute control of said real property and personal herein referred to, and after her death to pass as above provided. This is made with full knowledge of property rights of husband and wife, and with the knowledge and consent of my said wife."

The sons John A. and William R. were named as executors; both qualified, and both, after service, died before settlement of their accounts.

In July, 1893, the Robert Cardiff above named was appointed administrator with the will annexed, and in December of the same year filed, with his final account, a petition praying for its settlement and the distribution of the estate.

In January next the widow of the testator filed her written claim and notice that all of the property of her husband was community property, and that she claimed one-half thereof as being beyond his power of testamentary disposition.

Thereupon the widow of the son John A., as executrix of her husband's estate and as one of his heirs, filed her written objections to the account and to the claim of Mary Smith, alleging that Mary Smith had previously elected to take under the will.

The court found that all of the property of the estate was community property; that Mary Cardiff had died since the death of testator, leaving her two sons above named her sole heirs; "that since the death of said Robert Smith said Mary Smith, his widow, conveyed all her interest in said property mentioned in said will as vesting a life estate therein upon said widow, to said Robert and George Cardiff"; and finally, "that said Mary Smith, said widow of Robert Smith, after the

death of her said husband and prior to January, 1894,
said to her grandson, Robert Cardiff, 'that she wished
the will to stand.' She has remained in possession of
said real property and said personal property upon and
about said real property, being the property described
in the will as bequeathed to her a life estate, until, in
the year 1893, when she conveyed all her interest therein
as hereinbefore stated."

As a conclusion of law, separately stated, the court
held: "From the foregoing facts the court concludes
that said Mary Smith, widow of said Robert Smith, de-
ceased, had elected to take under the said will, and is
not entitled to a share of the moneys, securities, or notes
referred to in said will."

The will of Robert Smith was one whose terms forced
an election upon the widow. While courts will presume
that a testator meant to deal with that property only
over which he had power of testamentary disposition,
this presumption cannot prevail against the unequivocal
intention expressed in the will. That intention, when
it can be deduced from the instrument, governs its con-
struction. (*Morrison* v. *Bowman,* 29 Cal. 347.) Of two
permissible constructions, that which favors the con-
clusion that the testator was disposing only of his own
moiety of the community property will be adopted.
This is the scope of the doctrine in the cases of *Silvey's
Estate,* 42 Cal. 210; *In re Gwin,* 77 Cal. 313; *In re Gil-
more,* 81 Cal. 240. Here, however, the testator under-
takes in terms to dispose of all the property of the
community. Any attempt to give effect to the clear
provisions of the instrument would work an invasion
of the widow's rights as the surviving member of the
community. And this is done, so the instrument de-
clares, with full knowledge of those rights, and with the
knowledge and consent of the wife. The declaration
that the disposition is made with the knowledge and
consent of the wife does not, of course, bind her; but it
aids in showing the intent of the testator, which intent,
read into the terms of the will, was sufficient to put the

widow to her election. (*Etcheborne* v. *Auzerais*, 45 Cal. 121; *Stewart's Estate*, 74 Cal. 103.)

That election, declared upon distribution, was good and sufficient, unless, by her former acts in dealing with the property, she was estopped from making it. The previous election, which John's widow pleaded had been made by her mother in law, is therefore to be tested by the rules of estoppel. (Bigelow on Estoppel, 562.) The court in probate seems to have so viewed the matter, since it found the acts of the widow and concluded from them that she had elected to take under the will. The result reached was properly placed among the conclusions of law, and will not be disturbed. (Hayne's New Trial and Appeal, sec. 242; *Savings & Loan Soc.* v. *Burnett*, 106 Cal. 514.) But in this case it matters little whether it be treated as a conclusion or a finding. For, if regarded as a finding, it is declared by the court to be drawn from the facts previously stated; and, if they do not support it, under the rule in *People* v. *Reed*, 81 Cal. 70, 15 Am. St. Rep. 22, it must fall.

Before the widow can be denied her right to elect upon distribution it must be found that, with the knowledge of her rights by unequivocal acts evincing her intent, she has so dealt with the property left her by the will that it would be inequitable to permit her to avoid these acts and disclaim her intent. Professor Pomeroy, in language adopted by this court in *Burroughs* v. *De Couts*, 70 Cal. 371, thus enunciates the principle:

"To raise an inference of election from the party's conduct merely it must appear that he knew of *his right to elect*, and not merely of the instrument giving such right, and that he had full knowledge of all the facts concerning the properties.

"As an election is necessarily a definite choice by the party to take one of the properties and to reject the other, his conduct, in order that an election may be inferred, must evince an intention to elect, and *must show such an intention.*

"The intention, however, may be inferred from a series of unequivocal acts . . . . where a widow is required to elect between a testamentary provision in her favor and her dower, any unequivocal act of dealing with the property given by the will as her own, or the exercise of any unmistakable act of ownership over it, when done with knowledge of her right to elect, and not through a clear mistake as to the condition and value of the property, will be deemed an election by her to take under the will and to reject her dower." (Pomeroy's Equity Jurisprudence, sec. 515; Bigelow on Estoppel, 568.)

The acts of the widow as found by the court do not establish this implied election or election by estoppel.

An examination of the cases which find that an election has been exercised by reason of a deed discloses the fact that the deed is of property to which, except for the will, the grantor would have no title, and thus the deed becomes strong evidence of intent to take by the will, and for obvious equitable considerations the grantor will not be allowed to deny it. Such is not the present case. It is not found that she recognized by her deed the life estate in the land devised to her. She conveyed "all her interest in said property mentioned in said will as vesting a life estate therein upon said widow." This language leaves some thing of lucidity to be desired; but, however interpreted, upon the death of her husband she was the owner of an undivided one-half of all of that real estate, and her deed was sufficient to convey that title, and, for aught that appears, was meant to do so. She remained in possession of the property; but it was the home of the family, and for a limited time at least she was entitled to remain in possession, and it is not found that she continued that possession under claim of the estate devised to her by will. She said to her grandson "that she wished the will to stand"; but this is without weight or value unless it be further shown that she had full knowledge of the facts concern-

ing the properties and of her right to elect at the time she made the statement.

The court found that during the executorship of John A. Smith he received two hundred and sixty-four dollars and sixty-five cents, moneys of the estate, and disbursed the sum of seventeen dollars and fifty cents, leaving in his hands at the time of his death two hundred and forty-seven dollars and fifteen cents belonging to the estate of deceased which was never paid over.

When John A. died his estate went into probate. His brother William continued as executor of the father's estate, but presented no claim against the estate of the brother. When William in turn died the time for presenting claims against the estate of John A. had expired. The court distributed to the estate of John A. the three-tenths of the residue of the personal property devised to him and did not deduct the two hundred and forty-seven dollars and fifteen cents from his distributive share. John A. held the estate's money as trustee, and upon his death, being indebted to his beneficiary, the estate, its position became no better than that of any other creditor unless it was able to pursue the precise trust fund. (*Lathrop* v. *Bampton,* 31 Cal. 23; 89 Am. Dec. 141; *Roach* v. *Caraffa,* 85 Cal. 436.) It was the duty of William, as surviving executor, to have presented a claim against his brother's estate or to have compelled an accounting of his brother's trust in equity. (*In re Allgier,* 65 Cal. 230; *Chaquette* v. *Ortet,* 60 Cal. 594.) The court had no power to deduct the amount from the share of the estate of John A. upon distribution. Assets cannot be collected upon distribution (*In re Cook,* 77 Cal. 232, 233, 11 Am. St. Rep. 267), and the two hundred and forty-seven dollars and fifteen cents was not an advance to the devisee, so as to bring this case within the principle of *Estate of Moore,* 96 Cal. 522.

The order settling the administrator's account is affirmed and the decree of distribution is reversed.

Temple, J., Garoutte, J., Harrison, J., and Van Fleet, J., concurred.