[S. F. Nos. 18686, 18768.  In Bank.  Dec. 31, 1954.]

Estate of JACOB RESLER, Deceased.  FAY LIEBERMAN RESLER et al., Appellants, v. LENORE ROOS et al., Respondents.

Jefferson E. Peyser and Guernsey Carson for Appellants.

Sullivan, Roche, Johnson & Farraher and James Farraher for Respondents.

EDMONDS, J.—Jacob Resler died testate in 1949 leaving only post-1927 community property of himself and his widow, Fay Lieberman Resler. The widow's appeal from a decree of final distribution which also settles the executors' final account requires a construction of the will in connection with questions regarding the distribution of the property and payment of certain charges against the estate. Also in issue is the approval of an allowance to the widow for maintenance pending settlement of the estate.

The controversy principally concerns paragraph ''Fourth'' of the will, which reads as follows: ''There shall first be set aside to my beloved wife, property (other than that which I have specifically hereinafter devised and bequeathed) equal in value to one-half (½) of the community estate of myself and my said wife. In addition thereto, I hereby devise and bequeath to my said wife . . . such, if any, additional property as with her said share of our community estate shall give to her property of value equal to one-half (½) of that property which at the date of my death stands in the name of myself or of myself and my said wife (excluding therefrom any property held in the names of my wife and myself as joint tenants with right of survivorship).

''The further provisions of this my Last Will and Testament relate to that portion of my estate remaining after there has been set aside the property to be distributed and devised and bequeathed to my wife in accordance with the foregoing provisions of this paragraph.''

In paragraph ''Fifth,'' Resler left an automobile, household furniture and personal effects to Fay. Paragraphs ''Sixth'' through ''Ninth'' contain specific legacies or bequests to various collateral relatives.[1] In paragraph ''Eleventh,'' the testator directed: ''If at the time of my death I am the owner of an interest in that certain business . . . operating under the fictitious name of 'Swift Ltd,' I give and bequeath all of my said interest therein to my

---

[1]To Yetta Resler, his stepmother, $5,000; to Frances Resler Rosenfeld, a sister, $2,000; to Stanley Resler, a nephew, $1,000; to Phyllis Rose Baruch, a niece, his diamond ring; to Abraham Resler, a brother, his wristwatch.

sister, LENORE Roos." He bequeathed the residue of his estate in equal shares to three sisters, Mollie Resler Rogers, Lenore Roos, and Gertrude Resler, and a brother, Abraham Resler.

Paragraph "Third" provides that all estate and inheritance taxes "applicable to or payable on account of all gifts, devises and bequests" are to be held "chargeable to and payable out of my residuary estate and not chargeable to and payable by or collectible from the persons to whom or for whose benefit such gifts, devises and bequests are made."

Resler was survived by his widow and all of the collateral relatives named in the will, except a sister whose legacy lapsed. He left no lineal descendants. His will was admitted to probate, and letters testamentary were issued to Fay, his sister Lenore Roos, and Camil Roos, his brother-in-law, all of them serving as coexecutors. Upon application by Fay the court ordered payment to her of $2,000 per month as family allowance "beginning as of the 13th day of July, 1949, and continuing until further order of the court."

In November, 1950, the executors filed their first and final account and report, together with a petition for distribution and for instructions as to the rights of the claimants under the will. All of the beneficiaries, except Fay, filed objections to the account on the ground that the amount of the family allowance claimed for her was excessive. The widow filed an answer to the objections and a supplemental petition for instructions.

At the hearing on the objections, Fay sought to introduce extrinsic evidence as to the testator's intention in making the will. This evidence was rejected. Thereafter, she made a formal offer of proof consisting of the testimony of the attorney who prepared the will. The proffered testimony was that Resler told him he wished to dispose by the will of all of his property, including the one-half of the community property belonging to his wife, and the will was prepared with the purpose of giving effect to the testator's wishes.

The objections were sustained by a minute order which fixed the amount of the widow's allowance and attorneys' fees, gave instructions regarding the distribution of the estate and the payment of charges, and directed the preparation of a formal written order. On September 19, 1951, the trial judge signed a document, which was filed with the clerk and recorded, and which included findings of fact, conclusions of law and an order directing the executors to prepare and file with the court "(1) a supplemental statement bringing

said accounts up to the date of its filing, and (2) submit to this Court for approval and signing a form of decree of final settlement of said accounts and of distribution, which said decree shall be in accordance with the foregoing Findings of Fact and Conclusions of Law." On August 7, 1952, a formal decree of "Settlement of Final Account, Supplemental Account and Final Distribution" was entered.

The findings state that the whole of the estate is the community property of Resler and his widow. The "Albany property," real estate which at the time of Resler's death was owned by him and his sister Gertrude Resler as joint tenants, was found to be worth $40,000. That property, said the court, "was not on the date of Decedent's death held in the name either of himself or of himself and his wife . . . within the purview of paragraph 'Fourth' of the Will . . . and . . . cannot be considered by this Court in determining the value of the property to be distributed to" the widow.

According to another finding, Resler exchanged his interest in Swift, Ltd., for a promissory note made by Camil Roos, upon which $32,254.58 as principal and $5,053.39 as interest remained unpaid. The residuary legatees have filed their written consent to a distribution of the note to Lenore Roos, the finding continues, because of their expressed belief that such distribution would follow the decedent's intention as expressed in paragraph "Eleventh" of the will. It was concluded that the distribution of the note could be made "without affecting the distribution to said FAY LIEBERMAN RESLER of her share of the estate." In lieu of her interest in the note, the court directed that she receive in cash an amount equal to one-half of the unpaid principal.

Also stated as findings of fact are these determinations: Article "Third" of the will provides that the residuary estate is liable for payment of the estate and inheritance taxes applicable only to the gifts, devises and bequests mentioned in paragraphs "Fifth" through "Ninth." "There is no gift or devise or bequest made to . . . [Fay] in Article 'Fourth' of the said Will," but under that paragraph she "is entitled to receive half of that part of the estate remaining after payment of the expenses of administration, the debts of the decedent, the family allowance to . . . [her], and the federal estate taxes, if any, assessed against the estate." Also, "from a reading of the Will," Resler did not intend to devise or bequeath all of the community property

of himself and his wife but his testamentary purpose was to dispose of only the one-half of it owned by him.

With regard to the family allowance to Fay, the court found that, under a contract made between her, Lenore Roos and Camil Roos, in exchange for their waiver of objections to an allowance of $2,000 per month, she agreed to claim it for only one year. As she had received about $30,000 prior to the accounting, she was directed to reimburse the estate for the excess.

Fay has noticed appeals "from the whole and each and every part of the Findings of Fact, Conclusions of Law and Order . . . dated September 19, 1951" [S. F. No. 18686]; and from the decree dated August 7, 1951 [S. F. No. 18768].

Basically, her position is that her husband attempted to dispose of all of the community property, as well as his separate property, and that paragraph "Fourth" of the will is a bequest to her of a share of the estate equal to one-half of the gross value of all property standing in the name of the decedent at his death, including the Albany property, without deduction for taxes and expenses of administration. The will should be so construed as a matter of law, she argues, but if there is uncertainty in its terms the trial judge erroneously excluded extrinsic evidence to establish their meaning.

Even under the trial judge's construction of the will, she contends, the distribution of the estate and the payment of charges were decreed erroneously. According to that construction, the argument continues, by section 201 of the Probate Code she is entitled to one-half of the community property. The court could not dispose of her interest in the Roos note and other specific items of personal property. Furthermore, she argues, it was error to charge her share of the community estate with a portion of the costs of administration, including her family allowance, as well as estate and inheritance taxes. Her final contention is that the trial judge abused his discretion in limiting the amount of family allowance to $24,000.

The sole objective in the interpretation of a will is to ascertain the intention of the testator as disclosed by the language he has used. (*Estate of Brunet,* 34 Cal.2d 105, 107 [207 P.2d 567, 11 A.L.R.2d 1382]; *Estate of Lawrence,* 17 Cal.2d 1, 6 [108 P.2d 893]; Prob. Code § 105.) "In the construction of the will, it will be presumed the deceased knew as a matter of law that he had no power to dispose of

his wife's interest in the community property; it will also be presumed that he knew he could only dispose of one-half of the community without his wife's consent; and further it will be presumed he knew, unless the contrary appears from the terms of the will, that he did not intend to devise or bequeath that interest in the community property over which he did not have power to dispose." (*Estate of Klingenberg,* 94 Cal.App.2d 240, 243 [210 P.2d 514]; see also *Estate of Vogt,* 154 Cal. 508, 511 [98 P. 265]; *Estate of Moore,* 62 Cal. App. 265, 271 [216 P. 981].) ▇ "While courts will presume that a testator meant to deal with that property only over which he had power of testamentary disposition this presumption cannot prevail against the unequivocal intention expressed in the will. That intention, when it can be deduced from the instrument, governs its construction." (*In re Smith,* 108 Cal. 115, 119 [40 P. 1037].)

▇ Fay contends that in the present case the presumptions have been dispelled. One argument is that "since the testator here in fact undertook to dispose of the ring and his interest in Swift's, he thereby expressed his intention to control all of the property owned by him and his wife in the Will." That conclusion, however, does not necessarily follow. The testator may have believed that those items were his separate property or, if community property, that the widow would consent to the bequests or accept other property in lieu of them. ▇ "It is the testator's *intention,* and not the ground upon which that intention rests, that must control in the interpretation of his will. A mistaken belief on the part of a testator that he has the unrestricted power to dispose of the property absolutely is immaterial." (*Estate of Moore,* 62 Cal.App. 265, 274 [216 P. 981].) There is nothing in the will which negates his likely belief that the ring and the interest in Swift's were his separate property.

Another argument is based upon the provision of paragraph "Fourth" that "[t]here shall first be set aside to my beloved wife . . . property (other than that which I have specifically hereinafter devised and bequeathed) equal in value to one-half (½) of the community estate of myself and my said wife." As Fay reads this provision, by the use of the phrase "equal in value to one-half" of the community estate, her husband demonstrated an intention to give to her property in lieu of the items in which she could claim an interest pursuant to section 201 of the Probate Code.

▇ The respondents argue that this phrase shows only

a recognition of Fay's share of the community property and the purpose of the testator to dispose only of his own share of it. But something more than that must have been intended. The testator does not state that Fay's share is to be set aside, but what is set aside is property "equal in value" to one-half the community estate. In other words, there is a substitution of property sufficient in amount to bring the widow's portion to one-half the community estate. By that attempted substitution, the testator demonstrated an intent to exercise control over more than his share of the community property, and the contrary presumption is dispelled.

■■■ Although it is clear that the testator attempted to dispose of more than one-half of the community property, the disputed phrase of his will does not, as a matter of law, express an intention that the widow should receive her entire share of it as a bequest. Such a construction would require the words "set aside" to be defined as meaning "bequeath." That use would be somewhat inconsistent with the terminology in all 10 of the other clauses in which specific bequests or legacies appear, where the dispository word used is "bequeath." The only other place in which the words "set aside" are used is in the last sentence of paragraph "Fourth," which reads: "The further provisions ... relate to that portion of my estate remaining after there has been set aside the property to be distributed and devised and bequeathed to my wife in accordance with the foregoing provisions of this paragraph." The paragraph mentions property, in addition to "her said share of our community estate," which the testator said "I hereby devise and bequeath to my said wife." From its context in the latter use, the words "set aside" appear to have been intended more as a term of recognition than as a bequest.

Although Fay's construction of paragraph "Fourth" is tenable, the one relied upon by the respondents is equally plausible. It may well be that the testator sought to bequeath to Fay property in lieu of her community interest in specific items of property intended by him to be distributed to other relatives. The will is uncertain in that regard. ■■■ The general rule is that when "an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding" the oral declarations of the testator as to his intentions. (Prob. Code, § 105.) ■■■ An exception

to the exclusion of oral declarations of the testator is his instructions to a scrivener when offered to resolve an ambiguity in a will concerning the amount of a bequest. (*Estate of Dominici*, 151 Cal. 181, 186 [90 P. 448]; *Estate of Donnellan*, 164 Cal. 14, 17 [127 P. 166].)

The uncertainty apparent in paragraph "Fourth" is not in whether Resler sought to make a gift, for under either of the only tenable interpretations of the disputed phrase, he intended to bequeath some property to her. Instead, the question presented is whether his intention was to bequeath to her one-half of the community estate or property which would compensate her for any depletion of her share. It is, therefore, an ambiguity as to the amount of the bequest and falls directly within the exception to the rule against the admission of oral declarations of the testator to show his intention. Fay attempted to introduce the testimony of the attorney who drafted the will to show that Resler intended to dispose of all of the community property. As proof of such intention would determine the amount of the bequest under paragraph "Fourth," the evidence should have been admitted.

Fay next contends that the trial court erred in its treatment of the Albany property. The second sentence of the "Fourth" paragraph clearly is a bequest to Fay. It reads: "In addition thereto [the disputed community property], I hereby devise and bequeath to my said wife . . . such, if any, additional property as with her said share of our community estate shall give to her property of value equal to one-half (½) of that property which at the date of my death stands in the name of myself or of myself and my said wife (excluding therefrom any property held in the names of my wife and myself as joint tenants with right of survivorship)." As the remainder of the property is stipulated to belong to the community, the Albany real estate is the only property that could fall within the terms of this provision. Fay does not contend that she is entitled to any interest in that land but only that she is entitled to a sum equal in value to one-half of its value payable from the remainder of Resler's estate. However, the Albany property was held in joint tenancy with a sister. It did not stand in the name of "myself or of myself and my said wife," and cannot, therefore, be included in computing any bequest under this paragraph.

Fay correctly maintains that the Roos note should not be distributed to Lenore. Apparently the trial judge

was acting under paragraph ''Eleventh'' of the will in which the testator bequeathed to Lenore any interest he might have at his death in ''Swift, Ltd.'' But after the will was made, the testator transferred his interest in the business to Camil Roos in exchange for the latter's note. That sale divested the testator of his interest in the business, and, in absence of a showing of a contrary intent, it may not be assumed that he intended to bequeath the proceeds of it in lieu of his interest. (*Cf. Estate of Babb,* 200 Cal. 252, 256-259 [252 P. 1039]; *Estate of McLaughlin,* 97 Cal.App. 481, 484 [275 P. 874].)

The widow next contends that the trial court erred in charging her share of the community estate with a portion of the costs of administration and the federal estate taxes. ·The determination as to the property liable for these amounts must await the decision as to whether she takes under section 201 of the Probate Code or by a bequest under paragraph ''Fourth'' of the will. If, upon retrial paragraph ''Fourth'' is held to bequeath property equal to one-half of the value of the community property, that bequest should be entirely free from any such charges, to the extent that the residuary estate is sufficient to pay them. (Prob. Code, § 750.) If it be determined that a major part of her community share passes to her under the provisions of section 201 of the Probate Code, it is improper to charge against that amount any portion of the federal estate taxes.

In *Estate of Coffee,* 19 Cal.2d 248 [120 P.2d 661], when considering the right to take community property under section 201 of the Probate Code, this court said: ''It is clear . . . that the portion of the community property which belongs to the wife is the one-half which remains after the payment of the husband's debts and the expenses of administration apportioned between the community and separate property in accordance with the value thereof, and this is true even when the husband's share of the community, together with his separate property, is ample to pay those debts and expenses.'' (Pp. 252-253.) This rule was said to rest upon the principle that ''section 202 of the Probate Code . . . 'subjects all community property passing from the control of the husband, by his death or otherwise, to administration, to his debts, and to certain other charges. This is a provision more or less typical of the law in all community property states and should be construed as correlative to the principle that during the husband's life the community

property is subject to his debts. Both are apparently corollaries to his right of management and control.' '' (P. 252.)

In the Coffee case, the wife had successfully claimed in the trial court that her share of the community property was exempt from all debts and expenses. There was no apportionment of them by the trial court, and it was not indicated whether federal estate taxes and the amount of the family allowance, if any, were included among them. Nor did the trial court determine whether the property was acquired before or after 1927.

In *Estate of Atwell*, 85 Cal.App.2d 454 [193 P.2d 519], the problem was whether in an estate in which the community property was acquired before 1927 the federal estate taxes should be deducted from the gross value of the community property, one-half of the remainder being distributed to the wife. It was concluded that federal estate taxes are chargeable against the entire probate estate and a proper deduction from all of the community property.

Subsequently, in *Estate of Cushing*, 113 Cal.App.2d 319 [248 P.2d 482], both pre-1927 and post-1927 community properties were involved. The Atwell decision was followed in the disposition of the pre-1927 community property. But with regard to community property acquired after that time, the court concluded that federal estate taxes are not properly a charge or cost for the administration of the estate; instead, ''an examination of the statute [1948] makes it reasonably clear that the federal estate tax is chargeable against, and is a lien upon, only the gross estate and not upon the probate estate.'' (P. 328.) This conclusion was based upon the reasoning that ''the proration statute [Prob. Code, §§ 970-977; Stats. 1943, ch. 894] definitely expresses a policy that the federal estate tax is intended . . . to be levied . . . in accordance with the benefit that a person interested receives from the estate—such benefit is . . . limited to the taxable gross estate, and does not extend to the entire probate estate.'' (P. 333.) It was concluded that to subject the wife's share of the post-1927 community property to charges for federal estate taxes was erroneous.

The respondents urge that the Cushing case be disapproved. This argument, however, is based only upon the ground that insufficient consideration was given to the question in the Cushing case, and that there is no proper basis for distinguishing it from the Atwell decision. The conclusion reached

738

in the Cushing case was a proper one. ▮▮▮ It appears to be the general legislative intent to charge the amount of taxes payable for succession to a decedent's property to the person to whom it is distributed.

▮▮▮ Contrary to the widow's next contention, if she takes under Probate Code, section 201, the amount of her family allowance is a proper part of administration expenses chargeable to the community property. She relies upon a statement from *Estate of King*, 19 Cal.2d 354 [121 P.2d 716], as indicating that the widow's community interest may not be subjected to payment of any part of such an allowance: "A contrary construction of the statute might result in charging the obligation of an estate to pay family allowance to a widow against her own community property. That construction is opposed to the policy of the law with respect to family allowance." (P. 365.)

This argument misconceives the basis for the rule which makes the family allowance a charge against the community property. The charge is a debt payable from the community estate. (*Estate of Coffee, supra*, 19 Cal.2d at 252.) That allowance and the amount of the husband's debts must be deducted from the value of the community assets before the determination as to the community property available for distribution may be made.

The King case is not inconsistent with this conclusion. There the widow renounced her right to inherit under her husband's will and elected to share in his estate under the laws of succession. It was argued that following the renunciation, his one-half of the community property was "undisposed of by will" and, under section 750 of the Probate Code should be charged with all of the expenses of administration before resort to other property. The court held that the charge should not be borne alone by either the wife's share, the husband's share, or by the community property as distinguished from the separate property. Instead, it was concluded that the trial court correctly determined that the family allowance should be charged against the devisees and legatees "in the proportions that they respectively share in the properties, both community and separate, upon final distribution." (P. 362.) The contention that the husband's share of the community property was "undisposed of by will" within the meaning of section 750 was rejected.

Fay next contends that the court erred in limiting the family allowance to $24,000. ▮▮▮ It is settled, however,

that the widow may waive her right to a family allowance by conduct or by an agreement to that effect. (*Estate of Brooks,* 28 Cal.2d 748, 750 [171 P.2d 724].) There was ample testimony to support the finding that Fay agreed to waive her right to further family allowance after a period of one year. The testimony to the contrary created only a conflict in the evidence.

The appeal in S. F. 18686 purports to be from the findings of fact and conclusions of law and order of September 19, 1951. No appeal lies from such determinations (*Estate of Thompson,* 61 Cal.App.2d 188 [142 P.2d 337]); and the order of September 19th, directing the preparation of a formal written order is clearly interlocutory. (*Cf. Estate of Phillips,* 202 Cal. 490, 499 [261 P. 709].)

The purported appeal in S. F. 18686 is dismissed; the decree in S. F. 18768 is reversed with directions to proceed in accordance with this decision. Each party shall bear his own costs.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I concur in the judgment of reversal. However, I believe the decision of the court is contrary to *Estate of King,* 19 Cal.2d 354 [121 P.2d 716], holding that the community property may not be charged with a family allowance and the King case should be overruled.

Respondents' petition for a rehearing was denied January 26, 1955. Carter, J., was of the opinion that the petition should be granted.