[Civ. No. 12626. Third Dist. Oct. 28, 1971.]

Conservatorship of the Estate of WILMA H. WEMYSS, Conservatee.
BANK OF STOCKTON, Petitioner and Respondent, v.
WILLIAM E. WEMYSS, Contestant and Appellant.

## COUNSEL

Lee & Hertzer and Theodore B. Lee for Contestant and Appellant.

Gordon J. Aulik for Petitioner and Respondent.

## OPINION

**FRIEDMAN, Acting P. J.**—This is an appeal from a probate order made in the course of administration of a conservatorship. ▮ The primary question is whether the conservator may, with court approval, make gifts of principal to the conservatee's next of kin.

Appellant, a son of the conservatee, invokes *Estate of Christiansen,* 248 Cal.App.2d 398 [56 Cal.Rptr. 505], a decision sustaining permissibility of judicially supervised gifts of principal by the guardian of an incompetent's estate. Respondent, the conservator, argues that *Christiansen* applies solely to guardianships, not to conservatorships; that Probate Code section 1856, governing conservatorships, permits gifts only from surplus income.[1]

---

[1]Probate Code section 1856 provides in part: "On the application of the conservator or next of kin of a conservatee, the court may direct the conservator of the estate to pay and distribute surplus income, not used for the support and maintenance of the conservatee, or any part of such surplus income, to the next of kin whom the conservatee would, in the judgment of the court, have aided, but for the existence of

The conservator is wrong. *Christiansen* authoritatively construed the Probate Code provisions governing the guardianship of incompetents' estates; held that these statutes recognize the probate court's power to apply general equitable principles, including the traditional "substituted judgment doctrine," which permits the court to authorize transfers of property (i.e., income or principal) which the ward himself would have made had he been competent to act.

Turning to the conservatorship statutes, we find Probate Code section 1852, which in a general way invests conservators with the powers granted to the guardians of incompetents.[2] Since, as construed by the court in *Christiansen,* the latter statutes authorize guardians to make judicially supervised gifts of principal under appropriate circumstances, it follows that conservators have similar authority.

We describe the authority as "similar" rather than identical. The *Christiansen* opinion discusses the criteria for authorizing gifts of corpus, including such factors as the extent and permanence of the ward's incapacity, the primacy of the ward's needs, the uncertainties and expectancies in devolution of the estate, and finally, evidence of factors pointing to donative intent or attitude. (248 Cal.App.2d at pp. 424-428.) The determinant factors characterizing the conservatorship of an elderly but aware conservatee would differ from those obtaining in the guardianship of an incompetent. Variations in the age, needs and mental capacity of the ward; in the value, liquidity and productiveness of the estate; in the familial relationships and standards of living will play a role in the court's discretion.

In the light of these observations we turn to the case at hand: The Bank of Stockton is executor of the will of the late Edwin Wemyss, testamentary trustee of several trusts for his grandchildren and conservator of the estate of Wilma Wemyss, his widow. Edwin Wemyss' entire estate consisted of community property. There are two adult children, William, the appellant, and Mrs. Eleanor Sudduth, his sister. In 1966 when the conservatorship was established Mrs. Wemyss was 79 years of age. She requested the conservatorship on the ground that "due to age and infirmity [she] is unable to manage her estate." In 1967, according to an account filed by the conservator, the corpus of the conservatorship estate had a value in excess of one million dollars.

---

the conservatorship. The granting of such allowance and the amounts and proportions thereof shall be discretionary with the court, . . ."

[2]Section 1852 of the Probate Code provides: "Every conservator of the estate or of the person and the estate of a conservatee shall have the powers granted to a guardian of the estate or of the person and estate of an incompetent in Chapters 7, 8, and 9 of Division 4 of this code, . . ."

In September 1966, after the bank had been appointed conservator but before it discovered a savings account in Mrs. Wemyss' name, she withdrew $12,259.51 from the account and gave it to her adult son, William. She later asked the conservator that William be permitted to keep the gift and that a like sum be given to her daughter, Mrs. Sudduth. The conservator asked the court for instructions. The court approved the gift to William and authorized the conservator to deliver an equivalent amount to Mrs. Sudduth. The order did not specify whether these gifts were to be charged to corpus or income. In its first account, the bank later charged the Sudduth gift to principal. This account was approved by the court.

In August 1968 William Wemyss filed a petition, alleging that the conservatorship estate had a surplus income of $16,000; alleging that family trusts had not produced adequate income to sustain the customary living standard of his sister and himself, and requesting that the court approve distribution of the $16,000 to his sister and himself. At that point the conservator requested a certified public accountant to determine the net income of the conservatorship estate from its inception in May 1966 to the end of August 1968. The accountant's report showed a gross income of $165,523.31, total disbursements of $158,956.82 and surplus income of $6,566.49. Although Mrs. Wemyss had made her gift to William from a savings account; although the probate court had earlier designated no source for the gift to Mrs. Sudduth; despite the conservator's first account charging the latter gift to principal, the accountant chose to charge both gifts to income. An alternative choice by the accountant would have been reflected by an increase of more than $24,000 in the surplus income figure.

The court did not act on William's request for an allowance from income, but asked the parties to attempt an agreement. In that state of the matter the bank, in October 1969, filed its second account. The second account reflected a shift from the first account in that the conservator now chose to list the two gifts as reimbursements to principal and charges against income.

William filed an objection, charging that both gifts had been made from principal and should not be charged against estate income. The court overruled the objection. Referring to its prior order and without regard to its confirmation of the conservator's first account, the court declared "it appears clearly that the court, pursuant to Probate Code Section 1856, authorized distribution of surplus income. . . ."

██ The court erred in two respects: First, it misinterpreted its own order, which had made no allocation whatever of these charges. Second,

the court failed to exercise its discretionary power to consider whether, under the circumstances, the gifts should have been charged to principal. The court's failure to exercise discretion calls for reversal and for a hearing and determination on the merits. (*Estate of Christiansen, supra,* 248 Cal.App.2d at pp. 406, 428.)

■ Appellant charges error in another ruling assigning money to principal rather than income. During a period preceding the second account, the conservatorship estate received $64,000 as a family allowance from the estate of Edwin Wemyss. The conservator chose to treat one-half this amount as income and the other half as an augmentation of principal. Over appellant's objection, the court sustained this phase of the account.

The probate court based its ruling on the inacceptable theory that, without the family allowance, an equivalent amount of corpus would have been spent for Mrs. Wemyss' support. The theory is circular and would justify crediting the allowance in either direction. If absence of the family allowance would have necessitated drawing support money from principal, receipt of the family allowance avoided that necessity. There is no finding that the estate's remaining income was inadequate for the conservatee's support. Nor does the theory logically justify the 50-50 split which occurred.

The parties have referred us to no fixed rule allocating this kind of receipt either to income or to principal. ■ Contrary to the conservator's contention, the family allowance is not a distribution of community property to the widow; it is a payment for her support, not a distribution of capital. (Prob. Code, § 680; *Estate of Resler,* 43 Cal.2d 726, 738 [278 P.2d 1].) ■ The Probate Code provisions governing both guardianships and conservatorships contemplate the ward's support out of income before the invasion of principal. (See, §§ 1502-1505.) Thus, generally speaking, receipts for support, such as the family allowance, should be treated as income. There is, nevertheless, no ineluctable demand for that kind of treatment. Exceptional facts may call for its allocation to corpus, and the probate court should have discretion so to treat it. Here, the court's exercise of discretion was guided by an inacceptable criterion. The court should now exercise its discretion according to the conditions and needs of the conservatee, her estate and of her next of kin.

■ Still seeking to achieve maximum credits to income and to minimize principal, appellant objects to that phase of the account which charged to income expenses such as the following: appraisal fees, court costs, attorney and conservator's fees and gift taxes. Appellant invokes the Revised Uniform Principal and Income Act (Civ. Code, § 730 et seq.) and the Legal Estates Principal and Income Law (Civ. Code, § 731 et seq.).

While these statutes provide guidance, they do not govern the administration of conservatorships established under the Probate Code. (Civ. Code, §§ 730.15, 731.02.) Had the Revised Uniform Principal and Income Act been followed here, the fees and court costs would have been split between income and principal and the gift tax charged to principal. (Civ. Code, § 730.13.) For some undisclosed reason the conservator and the probate court chose to disregard this standard. Since the standard did not bind them as a matter of law, we cannot say they erred as a matter of law.

■ Appellant challenges allowance of a $6,000 fee to the conservatorship attorney. The attorney testified that over a period of 26 months he had spent 250 to 300 hours in the estate's affairs. Considered in relation to the services rendered and the size of the estate, the fee was well within the range of the probate court's discretion.

The order settling the conservator's second account is reversed as to those portions which treat the gifts to appellant and Mrs. Sudduth as charges against income and which treat half the conservatee's family allowance as a credit to principal. As to those phases of the account, the probate court is directed to reconsider the objections of William Wemyss in the light of this opinion. The order is otherwise affirmed. The conservatorship shall bear appeal costs.

Janes, J., and Pierce, J.,* concurred.

A petition for a rehearing was denied November 16, 1971.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.