[Civ. No. 50386. Second Dist., Div. Four. Dec. 22, 1977.]

Estate of WARBURTON C. WEBB, Deceased.
BERNARD R. FOY, as Executor, etc., Petitioner and Respondent, v.
WARBURTON C. WEBB, JR., Claimant and Appellant.

## COUNSEL

La Vine & Shain, Kingston & Martinez and H. Leland Shain for Claimant and Appellant.

No appearance for Petitioner and Respondent.

## OPINION

**WIENER, J.***—Warburton C. Webb, Jr. appeals from a judgment determining entitlement to estate distribution which required him to elect between either taking under the will of his deceased father or as his surviving joint tenant.

Warburton C. Webb died testate on March 19, 1976. He left surviving him his two children, Warburton C. Webb, Jr. and Elizabeth W. North. His will, which he signed on December 23, 1975, provided in paragraph FIFTH as follows:

"I give, devise and bequeath my condominium apartment at 2901 Golden Raid Road, #1, Walnut Creek, California, to my son, WARBURTON C. WEBB, my daughter, ELIZABETH WEBB NORTH, and my friend, MARTHA E. BLOOM, or the survivors of them, share and share alike. It is my intention that my said condominium apartment be sold by my Executor and the proceeds thereof distributed in fulfillment of this testamentary provision."

At the time of his death the condominium he described was in joint tenancy with his son.[1] Other provisions in the will provided for

---

*Assigned by the Chairperson of the Judicial Council.

[1]There is no statement in the record as to the dates of either the execution or recording of the joint tenancy deed. There is also no statement as to the identity of the grantor of that deed. It is implicit in the argument of counsel that the joint tenancy deed was recorded before the execution of the will.

distribution of certain items of personal property and one-half of the residue to each of the children. Mrs. Bloom was also named as the legatee of an automobile and shares of common stock.

After probate proceedings were commenced, the executor filed a petition under the provisions of Probate Code section 1080 seeking a declaration of entitlement to estate distribution. He inquired of the court whether the decedent's son should be put to an election to take under the joint tenancy deed or under the will. A petition for order instructing executor relating to the same issue was also filed.

A statement of claim of interest under the will of the decedent was filed by appellant on September 3, 1976, along with his demand for trial by jury.

A hearing on the petitions occurred on September 13, 1976, at which time, after a brief colloquy between the court and counsel for both the appellant and the executor, the hearing was continued to September 27, 1976. On the continued date, when it appeared as if the trial judge was going to require the election, counsel for the appellant requested a jury trial pursuant to his claim for determination of heirship. He stated that he intended to call the attorney for the decedent to present evidence as to the circumstances surrounding the execution of the will. He believed the attorney's testimony would also include a reference to a possible conservatorship of the decedent and the acquisition of the condominium by the conservator. The condominium was included in the will not to force an election by the son, but on the contingency that only if it were reacquired by the decedent under those circumstances was it to pass to the three persons named in the will.

The trial court denied the request stating that the proffered ". . . evidence simply strengthens the conclusion to me that the testator did not intend the son to have all of the property, . . ."

No witnesses were called; no exhibits introduced. The trial court obviously considered the status of the condominium as being in joint tenancy. The deed was not introduced in evidence.

The judgment signed on October 22, 1976, provided that, because the will was clear and unambiguous and its construction a matter of law, Warburton C. Webb, Jr. was required to elect between:

". . . (1) taking said condominium outright as surviving joint tenant and taking nothing under the decedent's Will; or

"(2) upon conveyance of said condominium to the Estate of WARBURTON C. WEBB, taking all benefits given him under the Will of WARBURTON C. WEBB."

The judgment also provided that if the son failed to file a written indication of how he chose to elect before the time of distribution of the estate, it would be presumed that he had elected to take the condominium and had waived his rights under the will. For purposes of distribution of the estate the son was to be treated as if he had predeceased the decedent.

The motion by appellant to vacate the order and transfer the case to civil calendar was denied on November 19, 1976. Following the denial of the motion, this appeal was filed by him.

 Appellant contends that the trial court exceeded its jurisdiction by denying his right to trial by jury. We agree.

The doctrine of election has generally been discussed in situations involving the death of a husband in which he has required his widow to elect the provisions for her under his will in lieu of any claim she might have by reason of community property rights in property of the estate. (See Prob. Code, § 201; *Estate of King* (1942) 19 Cal.2d 354, 364 [121 P.2d 716].) The "widow's election" has been a popular subject for articles and treatises dealing with the drafting of wills and estate planning. (See, e.g., 2 Cal. Decedent Estate Administration (Cont.Ed.Bar 1975) §§ 31-45, 31.104; Drafting Cal. Revocable Inter Vivos Trusts (Cont.Ed.Bar 1972) §§ 5.21-5.22, 5.31.)

 The word "election" in this context means ". . . the obligation imposed upon a party to choose between two inconsistent or alternative rights or claims in cases when there is a *clear* intention of the person from whom he derives one, that he should not enjoy both." (*Morrison* v. *Bowman* (1865) 29 Cal. 337, 347; italics supplied.) "[A] claimant cannot at the same time take the benefits under the will and repudiate the losses. He must either accept the terms of the will *in toto* or reject them *in toto*." (*Williams* v. *Williams* (1915) 170 Cal. 625, 627-628 [151 P. 10]; see also *Estate of Murphy* (1976) 15 Cal.3d 907, 915 [126 Cal.Rptr. 820, 544 P.2d 956].)

"The doctrine of election in connection with testamentary instruments has long been recognized and accepted in California. (*Morrison* v. *Bowman,* 29 Cal. 337, 347-352; *In re Smith,* 108 Cal. 115, 119 [40 P. 1037]; *Estate of Emerson,* 82 Cal.App.2d 510, 512-515 [186 P.2d 734]; *Estate of Resler,* 43 Cal.2d 726, 732-734 [278 P.2d 1]; *Estate of Wolfe,* 48 Cal.2d 570, 574 [311 P.2d 476].)" (*Estate of Waters* (1972) 24 Cal.App.3d 81, 85 [100 Cal.Rptr. 775].)

■ What a testator intends is the cardinal rule of construction in interpretation of wills. (Prob. Code, § 101; 80 Am.Jur.2d, Wills, § 1127 et seq.) The intent is first determined by the language of the will itself; the intention which is clearly expressed must be followed. (*Estate of Fair* (1901) 132 Cal. 523, 531 [60 P. 442, 64 P. 1000].)

The apparent intention of Warburton C. Webb appears to be clear from the face of his will for it seems that he wished his condominium to go to the three persons he named and the balance of the property in the manner as set out in his will.

It should be noted, however, that before ". . . the terms of *any written instrument* are clear, definite and free from ambiguity the court must examine the instrument in the light of the circumstances surrounding its execution so as to ascertain what the parties meant by the words used." (*Estate of Russell* (1968) 69 Cal.2d 200, 208-209 [70 Cal.Rptr. 561, 444 P.2d 353].) " '[W]hen a judge refuses to consider relevant extrinsic evidence on the ground that the meaning of written words is to him plain and clear, his decision is formed by and wholly based upon the completely extrinsic evidence of his own personal education and experience.' " (Citation omitted.) (*Estate of Russell, supra,* at p. 209.) ". . . it is self-evident that in the interpretation of a will, a court cannot determine whether the terms of the will are clear and definite in the first place until it considers the circumstances under which the will was made so that the judge may be placed in the position of the testator whose language he is interpreting." (*Estate of Russell, supra,* at p. 210.)

We are dealing with something more than mistaken grounds upon which the testator based his intentions. (Cf. *Estate of Resler* (1954) 43 Cal.2d 726, 733 [278 P.2d 1].) We are dealing with alleged factual circumstances which may reveal that the testator intended the transfer of the condominium under his will only upon its reacquisition by him.

The conundrum as to when extrinsic evidence is permitted to assist in the construction of a will has been the source of considerable legal literature. (See, e.g., Comment: *Extrinsic Evidence and the Construction of Wills in California* (1962) 50 Cal.L.Rev. 283.) The cases may have created an intellectual labyrinth to guide those involved in administration of estates, but one theme becomes apparent, however, and that is the unusual creativity exercised to overcome the harshness of Probate Code section 105[2] to allow the admissibility of the testator's oral declarations. (*Estate of White* (1970) 9 Cal.App.3d 194, 201 [87 Cal.Rptr. 881].) Even before Probate Code section 105 was discussed with such candor, extrinsic evidence was allowed to explain a latent ambiguity, an ambiguity which did not appear from the face of the will itself, but by some fact collateral to it.

In the present case facts outside the will were considered to determine the error created by the word "my" to describe ownership of the condominium by the decedent. Once a latent ambiguity has been shown by extrinsic evidence, it may be resolved by extrinsic evidence. (*Estate of Dominici* (1907) 151 Cal. 181 [90 P. 448]; *Estate of Donnellan* (1912) 164 Cal. 14 [127 P. 166].) Even in *Estate of Resler, supra,* which has been cited for the broad proposition that it is the testator's intention and not the ground on which it rests that must control in the interpretation of his will, the court held that it was error to exclude the testimony of the attorney who drafted the will to describe the amount of the bequest intended by the testator. (*Estate of Resler, supra,* at p. 735.) The instructions given by the testator to his attorney were also admissible in *Estate of Dominici, supra,* 151 Cal. 181, at page 185.

We should neither anticipate nor speculate what facts may be presented in this case at the time of trial. Whether counsel for the appellant will merely call one witness, the attorney who drafted the will, or others, he is entitled to commence the inquiry by the presentation of evidence.

Probate Code section 1081 provides that a trial of the facts in a proceeding to determine heirship must be by jury unless waived or not

---

[2]Probate Code section 105 reads: "When there is an imperfect description, or no person or property exactly· answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will or from extrinsic evidence, excluding the oral declarations of the testator as to his intentions; and when an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding such oral declarations."

requested. The appellant at the time of the continued hearing on September 27, 1976, requested a jury trial. This was his right under the law and the denial thereof was error.[3]

The judgment is reversed.

Files, P. J., and Kingsley, J., concurred.

---

[3]We do not find it necessary in this appeal to decide the question of how the residue should be distributed in the event the bequest to appellant fails by reason of his election to take the joint tenancy property.