135 Cal.App.3d 676 (1982)
185 Cal. Rptr. 540
Estate of OPAL CORINNE KENNEDY, Deceased.
CHRISTINE McMAHAN, as Executor, etc., Claimant and Appellant,
v.
PATRICIA HOSKIN, Claimant and Respondent.
Docket No. 64416.
Court of Appeals of California, Second District, Division Five.
September 13, 1982.
*678 COUNSEL
Lawson M. Brown for Claimant and Appellant.
Tyson & Ipswitch and Candis Tyson Ipswitch for Claimant and Respondent.
OPINION
ASHBY, J.
The decedent Opal Corinne Kennedy (Decedent) died testate on December 23, 1977. Her will, which was admitted to probate May 12, 1978, made provisions for her husband, Bob C. Kennedy (Husband), and her daughter, Patricia Lou Kennedy, now Patricia Hoskin (Daughter). Husband thereafter died. The executor of Decedent's estate filed a petition to determine interest and entitlement to distribution pursuant to Probate Code section 1080, and statements of interest were filed by Daughter and by the executrix of Husband's estate, Christine McMahan. Pursuant to stipulation the matter was bifurcated so that the court could first determine legal issues, each side reserving the right to try any factual issues remaining after the court's resolution of legal issues.
The court determined that under the will Husband, and thereafter Husband's estate, was put to an election whether to take the property bequeathed by the will or to assert Husband's rights as surviving joint tenant to certain joint tenancy property which the will purported to bequeath to Daughter.[1] Husband's executrix appeals, contending that the will did not force Husband to choose between taking the property left to him in the will and asserting his rights as surviving joint tenant. (Prob. Code, § 1240, subd. (o).)

*679 PROVISIONS OF THE WILL
The crucial provisions of Decedent's will are paragraphs third, fourth, fifth, and sixth as follows:
"THIRD: It should be known that all property standing in the name of my husband alone and all property standing in my name and my husband's name as joint tenants is our community property. It is my intention by this Will to dispose of all my separate property and my share of our community property (and quasi-community property, if any,) owned by me at the time of my death. In this regard it should also be known that the majority of the assets owned by my husband, BOB C. KENNEDY, and myself, are held in the form of joint tenancy. Said titles held in the form of joint tenancy have at no time been intended to be truly vested in joint tenancy between my said husband and myself, and no right of survivorship is intended in connection with said assets. Said assets have been placed in the form of joint tenancy at the direction of my said husband, BOB C. KENNEDY, as manager of our community estate. I am now and have at all times been convinced that any attempt that I may make to change the vesting of said property to its true nature of community property will result in unhappy differences existing between my said husband and myself and may result in an injury to my health. However, for purposes of both my own estate and my husband's estate, whichever of us may be first to pass away, it must be known that community property is the true nature of all of our assets and said assets must be probated as if they were actually in the form of community property.
"FOURTH: Except as hereinafter provided, I give to my husband, BOB C. KENNEDY, all interests that I may have in the goodwill of his accounting business and practice now conducted by him in his name and all of the personal property used by him directly in connection with said accounting business, and the balances in all commercial checking accounts that we may have and any interest that I may have in his clothing and similar personal effects, and in the personal automobile he may be using in connection with his business at the time of my death (which such automobile is now our 1972 Cadillac automobile), and I also give to my husband, BOB C. KENNEDY, any interest that I may have in the older model Jeep vehicle and the 26 foot Stevens power boat, his guns, fishing equipment and tools, and our mooring in Avalon Harbor, Catalina, and all furniture, furnishings and household effects except for my china which is hand painted by my mother, all of my *680 Wallace Grand Baroque silver, my silver tea set, and all oil paintings painted by my mother. In the event my husband, BOB C. KENNEDY, fails to survive me, I then give all of the above described assets to my daughter, PATRICIA LOU KENNEDY, or if she fails to survive me, I then give said assets equally to those of the children of my daughter, PATRICIA LOU KENNEDY, who survive me.
"FIFTH: I give all of my community interest and my husband's community interest in our Wallace Grand Baroque silver, my silver tea set, and the oil paintings painted by my mother to my daughter, PATRICIA LOU KENNEDY, providing she survives me, or in the event she fails to survive me, then equally to those of the children of my daughter, PATRICIA LOU KENNEDY, who survive me. In the event my husband, BOB C. KENNEDY, elects to take the rights given him by law in the assets described in this paragraph, all provisions in this Will shall be carried into effect as though my husband, BOB C. KENNEDY, had predeceased me, and in such case I direct that no probate homestead, allowance, or other benefits be paid to or granted to my husband, BOB C. KENNEDY, out of my estate.
"SIXTH: I give the entire residue of my estate, which shall include my undivided half interest in all community assets of my husband BOB C. KENNEDY and myself, together with my entire separate estate, to my daughter, PATRICIA LOU KENNEDY, providing she survives me, and in the event she fails to survive me, then equally to the living children of my daughter, PATRICIA LOU KENNEDY, who survive me, and if she leaves no children who survive me, then to my husband, BOB C. KENNEDY."
To summarize: Paragraph third declares that all property standing in the name of Husband alone or in the name of Decedent and Husband as joint tenants is in reality community property. Paragraph fourth bequeaths to Husband all of certain assets of Husband's business and certain items personal to him, Decedent relinquishing any community property rights she might have. Paragraph fifth bequeaths to Daughter all of the silver and oil paintings, including any community property interest Husband might have therein, and expressly requires Husband to waive all other benefits under the will if he asserts his community property interest in the silver and oil paintings. Paragraph sixth bequeaths the entire residue of the estate, including Decedent's "undivided half interest in all community assets of my husband BOB C. KENNEDY and myself" to Daughter.

*681 DISCUSSION
(1) Decedent could not, of course, bequeath half of any joint tenancy property to Daughter, because upon Decedent's death Husband became sole owner of all joint tenancy property by right of survivorship. (2a) However, if decedent for whatever reason nevertheless believed she could make such disposition, and clearly intended to give half of the joint tenancy property to Daughter, she could force Husband to an election. In order to accept the benefits of the will, i.e., the property bequeathed to him in paragraph fourth, Husband must accept the will in its entirety, including the disposition of joint tenancy property. If, contrary to the testator's intention, he asserts his right to all the joint tenancy property by right of survivorship, he must give up the other benefits to him in the will. (Morrison v. Bowman (1865) 29 Cal. 337, 347-352; Estate of Cecala (1951) 104 Cal. App.2d 526, 530 [232 P.2d 48]; Estate of Waters (1972) 24 Cal. App.3d 81, 85-86 [100 Cal. Rptr. 775].) The question presented is whether paragraph sixth did in fact bequeath half the joint tenancy property to Daughter and whether it would thwart Decedent's clearly manifested intent if Husband were allowed both to take the specific bequest in paragraph fourth and assert his right as survivor to all the joint tenancy property. (Morrison v. Bowman, supra, 29 Cal. at p. 349; Estate of Wolfe (1957) 48 Cal.2d 570, 574 [311 P.2d 476]; Estate of Orwitz (1964) 229 Cal. App.2d 767, 769 [40 Cal. Rptr. 545].)
Husband's executrix first argues that paragraph sixth did not in fact purport to give half the joint tenancy property to Daughter. The provision refers expressly to "the entire residue of my estate, which shall include my undivided half interest in all community assets of my husband BOB C. KENNEDY and myself, ..." Viewed in isolation, such provision could arguably be construed as indicating only an intent to dispose of Decedent's separate property and community property over which she had a rightful power of testamentary disposition. (3) Such a construction is to be preferred, but it must give way when the other provisions of the will clearly show an intent to dispose of the joint tenancy property as well. (Estate of Wolfe, supra, 48 Cal.2d at pp. 574-575.) In paragraph third Decedent unequivocally declared that "all property standing in the name of my husband alone and all property standing in my name and my husband's name as joint tenants is our community property." (Italics added.) Paragraphs fourth and fifth dispose of Decedent's community property interests in various personal property. Therefore, when paragraph sixth referred to the entire residue *682 of Decedent's estate including her half interest in all community assets, it necessarily included the joint tenancy property which Decedent had identified as community property in paragraph third. (See Estate of Vogt (1908) 154 Cal. 508, 511 [98 P. 265].)
Husband's executrix next argues that it was not Decedent's intent to put Husband to an election between the will and the joint tenancy property, because paragraph sixth did not expressly require such an election, in contrast to paragraph fifth, which did expressly require an election as to the silver and the oil paintings. This is a factor to be considered, but we do not find it controlling. An election may be required even though it is not expressed as such in the will. (Estate of Orwitz, supra, 229 Cal. App.2d at p. 769; Estate of Wolfe, supra, 48 Cal.2d at p. 574.) (2b) The court must determine from all the circumstances whether the intent of the testator would be thwarted by recognizing Husband's right of survivorship to all the joint tenancy property in addition to the bequests to him in the will. (Estate of Orwitz, supra; Estate of Wolfe, supra; Morrison v. Bowman, supra, 29 Cal. at p. 349; Estate of Webb (1977) 76 Cal. App.3d 169, 174 [142 Cal. Rptr. 642].) In this case the intent of Decedent is clear from paragraph third. She unequivocally declared, in considerable detail, that notwithstanding the form of title in joint tenancy, such property was in reality community property, that it was "my intention by this Will to dispose of all my separate property and my share of our community property," and that "said assets must be probated as if they were actually in the form of community property." With the exceptions of the personal property in paragraphs fourth and fifth, Decedent disposed of the entire residue of her estate including her half of community assets, to Daughter. Paragraph third obviously was intended to explain and justify giving half the joint tenancy property to Daughter notwithstanding the form of title. The "clear and manifest implication from the will" is that Husband's right of survivorship to all the joint tenancy property is inconsistent with the will. (Morrison v. Bowman, supra, 29 Cal. at p. 349; Estate of Vogt, supra, 154 Cal. 508, 511-512; Estate of Emerson (1947) 82 Cal. App.2d 510, 513, 514 [186 P.2d 734].) The trial court properly determined that an election was required.
(4) Finally, Husband's executrix contends that she was deprived of the right to a jury trial as to extrinsic evidence of Decedent's intent. (See Estate of Webb, supra, 76 Cal. App.3d 169, 174-176.) The record does not support this contention. The parties stipulated to a bifurcation of legal issues, which were to be tried first by the court, and factual issues, *683 if any remained, to be tried after the court's ruling on legal issues. The parties, including Husband's executrix in her trial brief, treated the interpretation of the will as a question of law for the court. Although instructed by the court to delineate any factual issues which might remain, Husband's executrix never suggested that she had extrinsic evidence to offer on the issue of Decedent's intent. By her conduct Husband's executrix consented to determination of the issue based on the language of the will itself and never offered extrinsic evidence on the point. The right to jury trial was not denied.
The judgment is affirmed.
Stephens, Acting P.J., and Hastings, J., concurred.
NOTES
[1] The court also nullified a purported "pro tanto election" filed by Husband before his death and revoked by Husband's executrix. This is not an issue on appeal.